# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2688

_____

United States of America,      *
      *
      Appellee,      *
      *   Appeal from the United States
   v.      *   District Court for the
      *   Southern District of Iowa.
      *
Michael Suitt,      *
      *
      Appellant.      *

_____

Submitted: January 13, 2009
Filed:  June 25, 2009

_____

Before LOKEN, Chief Judge, WOLLMAN and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Michael Suitt appeals the district court's[1] denial of his motion to suppress evidence that he possessed with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B).  We affirm.

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

I.

Dallas County, Iowa, Deputy Sheriff Scott Faiferlick ("Deputy Faiferlick") was driving to work with his canine when he observed the appellant, Michael Suitt, driving over the speed limit in a white Ford pickup truck. Observing that Suitt's truck appeared to have an expired registration, Deputy Faiferlick used a computer in his car to run a check on Suitt's license plate. The check confirmed that Suitt's registration had expired.

At 11:31 a.m., Deputy Faiferlick stopped Suitt's vehicle. After checking Suitt's driver's license, proof of insurance, and vehicle registration, Deputy Faiferlick asked Suitt to exit his vehicle and accompany him to the patrol car while Deputy Faiferlick ran additional checks on Suitt's license and registration. At the suppression hearing, Deputy Faiferlick explained that he wanted to run additional checks because the database used by dispatch is more complete than the database accessed via his car computer. At 11:34 a.m., Deputy Faiferlick told Suitt that he was going to issue a warning ticket.

While writing the warning ticket, Deputy Faiferlick began asking Suitt routine questions about his trip. When asked where he was going, Suitt hesitated and answered that he was heading to Ohio, but could not name the city. When asked whom he was going to see, Suitt said that he was going to see family. When asked for specifics, he replied, "I have some family and friends out there." When asked how long he would be in Ohio, Suitt said "as much time as I like." Throughout this questioning, Deputy Faiferlick observed that Suitt appeared nervous and fidgety.

At 11:39 a.m., Deputy Faiferlick ran the second registration check, this time

having dispatch use its database.[2]  At 11:44 a.m., Deputy Faiferlick gave Suitt a warning ticket and returned his driver's license.  As Suitt was walking away, Deputy Faiferlick asked Suitt whether he had "half a minute" to answer a few final questions.  Suitt said that he did, and Deputy Faiferlick then asked him whether he had any contraband in the car.  Suitt denied that he had anything illegal.  Deputy Faiferlick then asked for permission to search the vehicle.  Suitt refused to consent, saying that "I mean I'm kind of in a hurry right now," and "I'm on a tight schedule."  At this point Deputy Faiferlick decided to walk his drug dog around Suitt's vehicle.  At the suppression hearing, Deputy Faiferlick testified that Suitt's claim to be on a tight schedule triggered his decision to conduct a dog sniff because it seemed suspicious in light of Suitt's earlier statements implying that he was not in a hurry.  At 11:47 a.m., Deputy Faiferlick's canine, Hank, alerted to the bed of Suitt's truck.  Deputy Faiferlick then opened the bed of the pickup and discovered 32 bales of marijuana.

After being indicted on one count of possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B) and one count of forfeiture under 21 U.S.C. § 853, Suitt filed a motion to suppress evidence, which the district court denied.  Subsequently, this Court decided United States v. Peralez, 526 F.3d 1115 (8th Cir. 2008), in which we held that drug interdiction questions that prolonged a traffic stop for 10 minutes beyond the point at which the officer decided to issue a traffic citation unreasonably prolonged the detention under the Fourth Amendment.  Id. at 118.  Suitt then filed a supplemental motion for reconsideration of the denial of his motion to suppress citing our decision in Peralez.  The district court denied this motion for reconsideration finding that Peralez did not apply because Deputy Faiferlick did not ask drug interdiction questions, but only routine traffic questions, and therefore he did not unreasonably prolong the stop.  Suitt subsequently pled guilty to the possession with intent to

_____

[2]Apparently, at 11:41 a.m., Faiferlick also conducted a third check on his car computer, just as he had done prior to the stop.

distribute charge and was sentenced to 60 months imprisonment, but conditioned his plea on the appeal of the denial of his motion to suppress.

## II.

"We review a district court's factual findings for clear error and legal conclusions de novo when reviewing the denial of a motion to suppress." United States v. McGlothen, 556 F.3d 698, 701 (8th Cir. 2009). Stated succinctly, the primary issue in this case is whether the dog sniff that led to the discovery of the marijuana stored in Suitt's automobile was the result of an unconstitutionally prolonged traffic stop. Suitt's basic contention is that Deputy Faiferlick used routine traffic questioning as a pretext to prolong the stop and manufacture a basis on which he could search Suitt's vehicle. Suitt also argues that the marijuana should be suppressed because the dog sniff was conducted in response to the exercise of his constitutional right to refuse consent to a search.

Dog sniffs of the exterior of a vehicle are not searches under the Fourth Amendment. See United States v. Olivera-Mendez, 484 F.3d 505, 511 (8th Cir. 2007). "Such a dog sniff may be the product of an unconstitutional seizure, however, if the traffic stop is unreasonably prolonged before the dog is employed." United States v. Alexander, 448 F.3d 1014, 1016 (8th Cir. 2006), cert. denied, 549 U.S. 1118 (2007) (citing Illinois v. Caballes, 543 U.S. 405, 407 (2005)). Such a situation might typically occur when an officer unreasonably lengthens a roadside detention until another officer can bring a drug dog to the scene. However, Deputy Faiferlick had his drug dog with him when he stopped Suitt. Thus, we note as an initial flaw in Suitt's argument the fact that Deputy Faiferlick did not need any justifiable suspicion under the Fourth Amendment to legally conduct the dog sniff. Having said that, the dog sniff was nonetheless impermissible if it was the result of an unconstitutionally prolonged traffic stop. See Peralez, 526 F.3d at 1119; Alexander, 448 F.3d at 1016.

"The Supreme Court has analogized roadside questioning during a traffic stop to a *Terry* stop, which allows an officer with reasonable suspicion to detain an individual in order to ask 'a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.'" United States v. Rodriguez-Arreola, 270 F.3d 611, 617 (8th Cir. 2001) (quoting Berkemer v. McCarty, 468 U.S. 420, 439 (1984)). "A constitutionally permissible traffic stop can become unlawful, however, 'if it is prolonged beyond the time reasonably required to complete' its purpose." Peralez, 526 F.3d at 1119 (quoting Caballes, 543 U.S. at 407). "During a traffic stop, an officer may detain the occupants of the vehicle while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation." Id. (quotation omitted). "A reasonable investigation includes asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose." United States v. Sanchez, 417 F.3d 971, 975 (8th Cir. 2005) (quotation omitted). "Whether a particular detention is reasonable in length is a fact-intensive question, and there is no *per se* time limit on all traffic stops." Olivera-Mendez, 484 F.3d at 510. "When there are complications in carrying out the traffic-related purposes of the stop, for example, police may reasonably detain a driver for a longer duration than when a stop is strictly routine." Id. "'Reasonableness . . . is measured in objective terms by examining the totality of the circumstances.'" United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 646 (8th Cir. 1999) (quoting Ohio v. Robinette, 519 U.S. 33, 39 (1996)).

A number of our cases have held that "[o]nce an officer has decided to permit a routine traffic offender to depart with a ticket, a warning, or an all clear, the Fourth Amendment applies to limit any subsequent detention or search." Peralez, 526 F.3d at 1120 (quoting Alexander, 448 F.3d at 1016); see also $404,905.00 in U.S. Currency, 182 F.3d at 649 (traffic stop ends when officer tells suspect that he intends to return the suspect's documents). In Peralez, an officer prolonged a traffic stop, without reasonable suspicion, for 10 minutes after he told the suspects that they would

only receive a warning ticket for a traffic violation. 526 F.3d at 1118. Because the officer in Peralez used the 10-minute extension to engage the suspects in a series of drug interdiction questions unrelated to the basis of the stop, we held that "the trooper's focus on non-routine questions prolonged the stop 'beyond the time reasonably required' to complete its purpose." Id. at 1121 (quoting Caballes, 543 U.S. at 407). We did not require suppression of the evidence in Peralez, however, because the officer had announced his intention to search the vehicle before questioning the suspects, and he had the canine with him at the scene. Id. at 1121-22. Thus, the unconstitutionally prolonged detention was not "'a but-for cause of obtaining the evidence' . . ." Id. at 1121 (quoting Olivera-Mendez, 484 F.3d at 551).

Peralez does not control this case. First of all, its conclusion that the officer unreasonably prolonged the traffic stop was not necessary to its ultimate ruling, i.e. that the evidence need not be suppressed. Because the officer's decision to conduct a "dog sniff was not the consequence of a constitutional violation," id. (quoting Caballes, 543 U.S. at 408), the court's statements concerning the unlawfully extended stop are non-binding dicta, see John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, 913 F.2d 544, 550 (8th Cir. 1990).

Second, there are important factual distinctions between this case and Peralez that dissuade us from applying its reasoning here. Until the end of the encounter, Deputy Faiferlick did not ask drug interdiction questions like the officer in Peralez, but routine questions about Suitt's travel plans. The Supreme Court has rejected the notion that the Fourth Amendment prohibits questioning unrelated to the purpose of the original detention, provided that such questioning does not prolong the stop. Muehler v. Mena, 544 U.S. 93, 100-01 (2005); see also Olivera-Mendez, 484 F.3d at 510 ("Where the initial detention was not prolonged by questioning on unrelated matters, there was no additional seizure within the meaning of the Fourth Amendment." (quotation omitted)). Nonetheless, whether questioning is related or unrelated to the purpose of a detention is relevant to deciding whether the detention

was unnecessarily prolonged. After deciding to issue a warning and without any basis for suspecting that criminal activity was afoot, the officer in Peralez proceeded to question the suspects about the presence of guns, drugs, and other illegal activity. 526 F.3d at 1120. Such questioning could not plausibly be related to the purpose of the detention, and therefore it was an impermissible basis on which to "more than double[] the time Peralez was detained." Id. at 1121. Here, seconds after announcing his intention to let Suitt go with a warning, Deputy Faiferlick asked Suitt about his travel plans as he was writing the warning ticket. It would be arbitrary to the point of pure caprice if routine questions that would have been plainly related to the stop if asked a few seconds before this announcement lost their nexus to, and became an illegitimate basis for continuing, the detention when asked a few seconds later while Deputy Faiferlick engaged in the necessary process of completing the warning ticket.

Finally, there is no indication that the suspects in Peralez did or said anything suspicious during the officer's questioning that justified further interrogation. See id. However, Suitt repeatedly gave hesitant, evasive, and incomplete answers to Deputy Faiferlick's questions. Suitt would have us analyze this situation by focusing on each of his answers to Deputy Faiferlick's questions and asking whether and at what point Deputy Faiferlick obtained the suspicion necessary to delay the detention for 10 minutes beyond the conclusion of the basis for the initial stop. However, this approach would transform the common sense nature of the reasonable-suspicion standard into a highly artificial and technical inquiry. See $404,905.00 in U.S. Currency, 182 F.3d at 649 ("When the constitutional standard is reasonableness measured by the totality of the circumstances, we should not be governed by artificial distinctions."). Deputy Faiferlick's initial question about Suitt's destination was perfectly legitimate and did not prolong Suitt's detention. Suitt gave a vague, evasive answer. Deputy Faiferlick then asked another question about whom Suitt was visiting in Ohio, and Suitt again responded in an unconvincing manner. Although each answer could be innocent when viewed in isolation, the suspicious character of each response was magnified by the evasions that preceded it.

"An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered." United States v. Linkous, 285 F.3d 716, 720 (8th Cir. 2002); see also United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993) ("[I]f the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions."). Deputy Faiferlick initiated the questioning while performing the routine task of writing a warning ticket. Each of Suitt's hesitant responses added piece by piece to Deputy Faiferlick's growing doubts. Thus, this case is unlike Peralez, where the officer could not point to any grounds for suspicion that developed in the course of his drug interdiction questioning. See 526 F.3d at 1120. Accordingly, we hold that there was reasonable suspicion to prolong the stop for additional questioning after the basis for the initial stop had been resolved.

Having concluded that Deputy Faiferlick's questioning did not unreasonably prolong the stop, we must now consider whether the dog sniff constituted a discrete constitutional violation. Suitt argues that the dog sniff constituted such a violation because Deputy Faiferlick refused to let him leave after he declined consent to search his car, and that the exercise of his right not to consent to the search was an improper basis on which to continue the stop. While we agree with Suitt that exercising one's right not to consent to a search is not a suspicious action that would justify an otherwise unconstitutional seizure, Suitt's argument fails because the dog sniff was neither a search nor a seizure requiring any Fourth Amendment justification. We have repeatedly upheld dog sniffs that were conducted within a few minutes after a traffic stop ended. See Alexander, 448 F.3d at 1017 (holding that a dog sniff four minutes after the conclusion of a traffic stop was a *de minimis* extension of the stop and not unreasonable); United States v. Martin, 411 F.3d 998, 1002 (8th Cir. 2005) (holding that a dog sniff conducted two minutes after the conclusion of a traffic stop was not unreasonable); $404,905.00 in U.S. Currency, 182 F.3d at 649 (holding that a canine sniff thirty seconds to two minutes after conclusion of a stop was not an

unconstitutional detention). Deputy Faiferlick walked his canine around Suitt's vehicle at approximately 11:47 a.m., three minutes after he ended the stop at 11:44 a.m when he returned Suitt's license and issued the warning ticket. This constituted no more than a *de minimis* extension of the stop. Thus, no discrete Fourth Amendment event occurred as a result of Suitt's denial of permission to search his vehicle that would need to be predicated upon reasonable suspicion. Consequently, the search of Suitt's vehicle and seizure of 32 bales of marijuana did not violate the Fourth Amendment.

## III.

Accordingly, the judgment below is affirmed.

---