# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1359

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| Marcos Andrew Munoz, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: November 18, 2009
Filed: January 13, 2010

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Marcos Andrew Munoz pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In the plea agreement, Munoz reserved the right to appeal the denial of his motion to suppress. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

**I.**

On November 6, 2005, Munoz was driving a rented Pontiac east on Interstate 80 in Nebraska when stopped for speeding by State Trooper Robbie Jackson. The stop was videotaped by a camera in the cruiser, and audio-recorded by a microphone

on the officer. Trooper Jackson asked Munoz for his driver's license; he responded he did not have one, it had been suspended. Trooper Jackson asked for the vehicle's registration and was handed the rental agreement. The Pontiac was rented by the passenger, Kristy Smith. Munoz told Trooper Jackson that he began driving after Smith got tired. Trooper Jackson directed Munoz to the passenger seat of the cruiser. There, he asked for Munoz's name, date of birth, and travel plans. Trooper Jackson called dispatch to check Munoz's criminal record. Dispatch relayed that Munoz had "a criminal history," but provided no specifics.

Re-approaching the Pontiac, Trooper Jackson asked Smith for her identification and about her travel plans. Smith handed him her driver's license. Trooper Jackson returned to the cruiser and called dispatch with Smith's information.

Trooper Jackson told Munoz he would release him with only a citation. He handed Munoz the rental agreement and explained the citation. As Munoz reached for the door handle to exit the cruiser, Trooper Jackson said, "OK, well I would like to ask you guys for a moment of your time." He told Munoz about a recurring problem of drugs being driven into Nebraska from Colorado. Trooper Jackson asked for permission to search the Pontiac, saying that he would also ask Smith because she had rented it. Munoz replied that Trooper Jackson would have to ask Smith. Trooper Jackson told Munoz to remain in the cruiser.

Trooper Jackson returned to the Pontiac with Smith's driver's license. He told her that Munoz was going to get a ticket, the traffic stop was over, and she should take over driving. He then asked her for a little bit more cooperation. He told Smith about the drug trafficking problem and asked permission to search the Pontiac. Smith consented to the search. Trooper Jackson asked if there was anything illegal in the vehicle. She responded that other than some alcohol or beer bottles, she was not aware of anything. Trooper Jackson asked Smith to exit the Pontiac and escorted her to the back seat of the cruiser. While they were there, Munoz asked whether Trooper

Jackson should use a drug dog. Trooper Jackson said he did not need one and closed the cruiser door.

Back at the Pontiac, Trooper Jackson began searching the front passenger area. There was a backpack on the floorboard. Trooper Jackson did not know who it belonged to. He picked it up and placed it on the passenger seat, hearing the clinking of glass bottles inside. He unzipped the bag and removed beer bottles. Trooper Jackson noticed that the backpack still seemed heavy. Unzipping the front pouch, he found a loaded .45 caliber handgun. Trooper Jackson said, "bingo." He asked Smith if the backpack was hers; she said it was Munoz's. Drawing his weapon, Trooper Jackson placed Munoz under arrest.

Trooper Jackson continued the search. In the backpack, he found a digital scale and a small quantity of methamphetamine. Next, in the console between the front seats, he found two glass pipes, which, based on his training and experience, he recognized as "crack pipes."

## II.

Munoz appeals the denial of his motion to suppress the evidence found in the backpack. This court reviews "the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." *United States v. Hogan*, 539 F.3d 916, 921 (8th Cir. 2008). "This court will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *Id.*

Denying the motion to suppress, the district court[1] assumed that Munoz was seized in violation of the Fourth Amendment. The court also assumed that the search of Munoz's backpack was unlawful. However, the district court ruled that the contraband in the backpack would have been inevitably discovered.

## A.

Munoz does not argue that the initial traffic stop for speeding was unlawful, or that it was improper for Trooper Jackson to ask questions about travel plans, collect documentation, and run background checks. Rather, Munoz contends that his detention was unreasonably extended once the traffic citation was issued and his documents were returned. The district court assumed that the stop was unreasonably extended (bypassing the argument whether Munoz was free to leave after he received the citation). However, the facts found by the district court, all of which are supported in the record, demonstrate that the encounter became consensual at this time. *See United States v. Alvarez-Manzo*, 570 F.3d 1070, 1075 (8th Cir. 2009) (whether officer's acts constitute a seizure is a question of law, reviewed de novo).

After making a traffic stop, an officer may detain the driver while he completes "a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." *United States v. Barragan*, 379 F.3d 524, 528-29 (8th Cir. 2004), *quoting United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999). "Once this initial investigation is finished, however, the purpose of the traffic stop is complete and further detention of the driver or vehicle would be unreasonable, 'unless something

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention' or unless the continued encounter is consensual." ***United States v. Flores***, 474 F.3d 1100, 1103 (8th Cir. 2007), *quoting **United States v. Jones***, 269 F.3d 919, 925 (8th Cir. 2001). If the encounter becomes consensual, it is not a seizure, "the Fourth Amendment is not implicated, and the officer is not prohibited from asking questions unrelated to the traffic stop or seeking consent to search the vehicle." ***Id.***

Whether an encounter is consensual depends on the facts of the case. ***Jones***, 269 F.3d at 925. "A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area." ***Flores***, 474 F.3d at 1103. A person is seized within the meaning of the Fourth Amendment when, under the totality of the circumstances, "a reasonable person would have believed that he was not free to leave." ***Jones***, 269 F.3d at 925. Circumstances of a seizure may include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." ***Flores***, 474 F.3d at 1103, *quoting **United States v. White***, 81 F.3d 775, 779 (8th Cir. 1996); s*ee also **United States v. Nunley***, 873 F.2d 182, 184-85 (8th Cir. 1989) (defendant was seized when officers' statements were more than routine questioning, and suggested to defendant that she was the particular focus of an investigation). Conversely, if a reasonable person feels free to "disregard the police and go about his business," the encounter is consensual. ***Florida v. Bostick,*** 501 U.S. 429, 434 (1991), *quoting **California v. Hodari D.***, 499 U.S. 621, 628 (1991). "The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." ***Michigan v. Chesternut***, 486 U.S. 567, 573 (1988).

The factual findings of the district court show that Munoz was no longer seized once Trooper Jackson handed him the citation and rental agreement. Trooper Jackson was the only officer present, he did not display his weapon, he did not touch Munoz, he returned everything Munoz needed to continue his trip, he merely requested further cooperation, and his statements describing the drug trafficking problem did not suggest that Munoz was the particular focus of a drug trafficking investigation. The fact that Munoz reached for the door handle *before* Trooper Jackson asked for a moment of his time shows that Munoz felt free to leave, but then agreed to cooperate further. Munoz told Trooper Jackson that he should ask for Smith's consent to search the Pontiac, indicating that he was allowing the continuation of the encounter. That Trooper Jackson told Munoz to remain in the cruiser while he spoke with Smith – as Munoz suggested – did not turn the consensual encounter back into a seizure. *See United States v. McManus*, 70 F.3d 990, 992-93 (8th Cir. 1995) (officer's direction to defendant to come back and have a seat did not transform consensual encounter into seizure); *United States v. Angell*, 11 F.3d 806, 809-10 (8th Cir. 1993) (officer's statement to "Stay there" or "Hold it right there" did not transform consensual encounter into seizure), *abrogated on other grounds as recognized by United States v. McKinney*, 120 F.3d 132, 133 (8th Cir. 1997). *But see United States v. Garrett*, 47 F. Supp. 2d 1257, 1265 (D. Kan. 1999) (ruling, without extended discussion, that driver was seized after officer directed him to remain in the patrol car while officer spoke with passenger). Because Munoz was no longer seized, his Fourth Amendment rights were not violated while Trooper Jackson obtained Smith's consent to search.

Alternatively, even if Munoz remained seized after the citation and documents were returned to him, any violation was *de minimis*. Only two-and-a-half minutes elapsed between Trooper Jackson's request for a moment of Munoz's time and Smith's consent to search the Pontiac. In total, only five minutes elapsed between his request for a moment of Munoz's time and his discovery of the handgun. *See United States v. Suitt*, 569 F.3d 867, 873 (8th Cir. 2009) (seizure of three minutes from lawful conclusion of stop until dog sniff provided probable cause was *de minimis*

-6-

intrusion); ***United States v. Robinson***, 455 F.3d 832, 834 (8th Cir. 2006) (seizure of a few minutes from lawful conclusion of stop until officers had probable cause was *de minimis* intrusion); ***United States v. Alexander***, 448 F.3d 1014, 1016-17 (8th Cir. 2006) (seizure of four minutes from lawful conclusion of stop until dog sniff provided probable cause was *de minimis* intrusion). The district court's factual findings, which are not clearly erroneous, show that Munoz was not detained in violation of his rights.

**B.**

The district court also assumed that Trooper Jackson violated Munoz's rights when he searched the backpack without his consent. Trooper Jackson obtained Smith's consent to search the Pontiac. Munoz does not contend that his consent was necessary to authorize a search of the car. Rather, he contends that Smith's consent did not include his backpack.

"Consent to search . . . may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to, the item to be searched." ***United States v. James***, 353 F.3d 606, 613 (8th Cir. 2003). "Common authority" is determined by "mutual use, joint access, and control, and is a question of fact." ***Id.*** (citation omitted). An officer cannot "rely on a third party's consent to intentionally bypass a person who is present, has a superior privacy interest in the premises, and actively objects to the search." ***United States v. Esparza***, 162 F.3d 978, 980 (8th Cir. 1998), *citing* ***United States v. Brokaw***, 985 F.2d 951, 953 (8th Cir. 1993). However, a search is lawful "where officers reasonably rely on the consent of a third party who demonstrates apparent authority to authorize the search, even if the third party lacks common authority." ***United States v. Nichols***, 574 F.3d 633, 636 (8th Cir. 2009), *citing* ***Illinois v. Rodriguez***, 497 U.S. 177, 188 (1990). "Apparent authority is present when 'the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over'" the thing searched. ***Id.***, *quoting* ***Rodriguez***, 497 U.S. at 188.

-7-

Munoz was the owner of the backpack. There is no evidence that Smith had joint use of it, and therefore, she did not have common authority over it. Smith's consent to search the Pontiac did not include Munoz's backpack. *See United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993) (holding that one occupant of rental car did not have the authority to consent to the search of another occupant's purse where there was no evidence of joint access to or shared control over it), *overruled on other grounds by United States v. Kim*, 105 F.3d 1579, 1580-81 (9th Cir. 1997). Trooper Jackson also did not reasonably believe that Smith had authority to consent to the search of the backpack, as there were two people in the car who each had been sitting in the passenger seat during the trip. In fact, Trooper Jackson testified that, at the time of opening the backpack, he did not know whose it was. Because Munoz did not consent to the search of his backpack, his Fourth Amendment rights were violated by the search.

## C.

Munoz argues the district court erred in concluding that the evidence in his backpack would have been inevitably discovered. Although the search of Munoz's backpack was unlawful, "the evidence found need not be suppressed if the two prongs of the inevitable discovery doctrine are proved by a preponderance of the evidence: (1) there is a reasonable probability the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Thomas*, 524 F.3d 855, 858 (8th Cir. 2008); *United States v. Pruneda*, 518 F.3d 597, 604 (8th Cir. 2008); *see also Nix v. Williams*, 467 U.S. 431, 444 & 448 (1984).

The district court concluded that Trooper Jackson would have lawfully searched the console of the Pontiac even if he had not unlawfully searched the backpack. He found crack pipes in the console, which would have provided probable cause to search

anywhere in the car, including in the backpack, for further evidence of drug activity. *See United States v. Ross*, 456 U.S. 798, 820-22 (1982) (probable cause justifies search of every part of vehicle, including containers therein, that may conceal the object of the search); *United States v. Rowland*, 341 F.3d 774, 785 (8th Cir. 2003) (holding that discovering razor blades, rolling papers, and a syringe during *Terry* search of vehicle provided probable cause to search every part of the vehicle and its contents for further evidence of drugs); *United States v. Fladten,* 230 F.3d 1083, 1086 (8th Cir. 2000) (observation of "an item commonly used in the manufacture of methamphetamine . . . in plain view in the back seat" of an automobile gave probable cause to search other parts of the automobile for further contraband or evidence).

The fact that Trooper Jackson searched the console after searching the backpack proves, beyond a reasonable probability, that he would have eventually searched the console. Trooper Jackson testified about his background and training in identifying drugs and drug paraphernalia, testimony the lower court found credible. He immediately recognized the glass pipes in the console as "crack pipes." His discovery of drug paraphernalia provided probable cause to search everywhere in the Pontiac, including Munoz's backpack, for further evidence of drugs. While looking for drug contraband in the backpack, Trooper Jackson would have discovered the handgun. The district court correctly ruled that the contraband in the backpack would have been discovered by lawful means in the absence of police misconduct.

The second prong "requires that the government prove that there was, at the time of the search of the [backpack], an actual other investigation that would have led to discovery of the otherwise unconstitutionally obtained evidence." *James*, 353 F.3d at 617. Before searching the backpack, Trooper Jackson had obtained Smith's consent to search the Pontiac, and was in the process of searching the entire car (including the console). *See Pruneda*, 518 F.3d at 604. Smith's valid consent was an actual other investigative method of searching the Pontiac. The lawful search of the console would have led to the discovery of the (otherwise unlawfully obtained) evidence in

Munoz's backpack.  The district court properly concluded that the contraband in the backpack would have been inevitably discovered.

## III.

The judgment of the district court is affirmed.

_____