# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3296

_____

United States of America,

               Appellee,

v.

Richard Norwood,

               Appellant.

          *  Appeal from the United States
          *  District Court for the District
          *  of Nebraska.
          *
          *  [UNPUBLISHED]
          *

_____

Submitted: March 8, 2010
Filed: May 28, 2010

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

A county sheriff pulled Richard Norwood over and found a kilogram of cocaine in his car. Norwood moved to suppress the cocaine, arguing that the officers violated his Fourth Amendment rights both in the initial stop and by detaining him without probable cause. The magistrate judge recommended that the motion be denied; the district court[1] agreed. Norwood pled guilty to possession with intent to distribute 500

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, adopting the report and recommendations of the Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

grams or more of cocaine, but reserved the right to appeal the suppression ruling. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Sergeant Edward Joseph Van Buren of the Douglas County (Nebraska) Sheriff's Department pulled Norwood over for following too closely and not traveling the minimum speed. Norwood said he was heading back home to Ohio after attending his brother's wedding over the weekend in California. This made Van Buren suspicious because it was a long way to drive for a weekend. Norwood was unable to locate the vehicle's registration, and after handing Van Buren his driver's license and insurance card, said the car belonged to his nephew. This too made Van Buren suspicious because the car was insured under Norwood's name, and in Van Buren's experience this is a classic tactic to distance oneself from a vehicle that has contraband. Van Buren testified that Norwood appeared more nervous than people normally do. Van Buren also stated the fast-food wrappers and lack of luggage in the car made him suspicious, and that Norwood made inconsistent statements about whether his luggage was in the trunk or in the passenger compartment. Van Buren decided to check the vehicle's registration and Norwood's driver's license through the El Paso Intelligence Center because he suspected drug activity and the Center provides information on border crossings. This call took three minutes.

Eventually, Van Buren returned Norwood's license, issuing a verbal warning. He then asked: "Hey, before you leave, can I ask you some additional questions?" Norwood responded: "Go ahead." Van Buren asked if everything in the car belonged to Norwood, to which he again said the car wasn't his. About then, a second officer with a drug-sniffing dog arrived. Van Buren asked Norwood for permission to search the car. Norwood declined, saying "I just want to get home." Van Buren told him, "Wait right here." About a minute and a half later, the drug-sniffing dog went around

Norwood's car, and indicated the trunk. Searching there, officers found a kilogram of cocaine.

Norwood moved to suppress the cocaine. A magistrate judge concluded that (1) the initial stop was valid as Van Buren witnessed two traffic violations, (2) Norwood's inconsistent statements about his luggage provided reasonable suspicion to prolong the stop for further investigation, (3) the canine sniff took place within minutes and caused a de minimis intrusion, and (4) the positive alert from the canine provided probable cause to search the vehicle. The magistrate recommended that the motion to suppress be denied.

Agreeing, the district court found that his nervousness, the fast-food wrappers, his explanation for the trip, his inconsistent statements about the luggage, and his failure to produce the vehicle's registration, taken together, constituted reasonable suspicion to continue his detention. The district court also ruled that Norwood was detained only a minute and a half from the time he refused consent to search until the drug dog deployed, and that this detention was only a de minimis Fourth Amendment intrusion. Norwood appeals, arguing (1) there was no reasonable suspicion to continue the traffic stop after the officer issued his warning, and (2) despite this court's previous holdings, the Fourth Amendment does not allow de minimis intrusions.

II.

Reviewing the denial of a motion to suppress, this court reviews the factual findings for clear error and legal conclusions de novo. *United States v. Suitt*, 569 F.3d 867, 870 (8th Cir. 2009). Norwood first argues that the dog sniff leading to the discovery of the cocaine resulted from an unconstitutionally prolonged traffic stop. "Dog sniffs of the exterior of a vehicle are not searches under the Fourth Amendment." *Id.*, citing *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007). "Such a dog sniff may be the product of an unconstitutional seizure,

-3-

however, if the traffic stop is unreasonably prolonged before the dog is employed." *Suitt*, 569 F.3d at 870, citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (internal citation omitted).

Norwood's detention was not unreasonably prolonged. Norwood was validly pulled over. He argues that Van Buren's questions during the stop about luggage, ownership of the car, and destination, along with his decision to call the El Paso Intelligence Center (rather than police dispatch), unreasonably extended the stop. However,

> having made a valid traffic stop, the police officer may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning. During this process, the officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may search the vehicle, and he may act on whatever information is volunteered.

*United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999). Here, everything Van Buren did until issuing the warning was within the scope of a permissible traffic stop, and thus reasonable.

After issuing the warning, Van Buren asked: "Hey, before you leave, can I ask you some additional questions?" Norwood responded: "Go ahead." "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and implicates no Fourth Amendment interest." *United States v. White*, 81 F.3d 775, 779 (8th Cir. 1996) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). During the one-minute discussion after the issuance of the warning, the stop was consensual. Van Buren did not indicate that Norwood had to remain and talk with him, either implicitly or explicitly. On the contrary, Van Buren's question indicated that compliance was voluntary.

-4-

However, the consensual encounter clearly became non-consensual after about a minute. Van Buren asked if he could search Norwood's car. Norwood stated "I just want to get home." Van Buren told him, "Wait right here." At that point, no reasonable person would have felt free to go. The issue is whether Norwood was illegally detained for the minute and a half between the time he said he wanted to get home, and the time the dog found the cocaine.

Norwood acknowledges that under this court's precedent a de minimis delay does not violate the Fourth Amendment. *See United States v. Rivera*, 570 F.3d 1009, 1014 (8th Cir. 2009) (holding that a two-minute delay while a dog sniffs around a car is de minimis and does not violate the Fourth Amendment); *United States v. Martin*, 411 F.3d 998, 1002 (8th Cir. 2005) (same); *$404,905.00 in U.S. Currency*, 182 F.3d at 646. Norwood contends that the Supreme Court's decision in *Illinois v. Caballes*, 543 U.S. 405 (2005), calls this court's precedent into question. *Caballes* states, "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* at 407. This court previously rejected this argument:

> At most, Alexander's detention was extended some four minutes from the point at which he was notified that he would receive a warning ticket to the point at which the dog sniff was completed. Alexander contends that we should consider overruling *$404,905.00* and *Martin* because they are in conflict with the Supreme Court's decision in *Caballes*. Putting aside the fact that we are not free to reconsider the decisions of other panels of this court, we see no inconsistency between *Caballes* and those two cases. Because the parties agreed in *Caballes* that the dog sniff occurred during a legitimate traffic stop, the Court was not called upon to address the question of the length of time that a dog sniff can constitutionally be conducted following the conclusion of a legitimate stop. 543 U.S. at 407, 125 S.Ct. 834. Moreover, the Court noted that "conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise conducted in a reasonable manner." *Id.* at 408, 125 S.Ct. 834. It is precisely this reasonableness inquiry that led us to

recognize in *$404,905.00* that the artificial line marking the end of a traffic stop does not foreclose the momentary extension of the detention for the purpose of conducting a canine sniff of the vehicle's exterior. 182 F.3d at 649.

*United States v. Alexander*, 448 F.3d 1014, 1017 (8th Cir. 2006), *cert. denied*, 549 U.S. 1118 (2007). *See also* **Suitt**, 569 F.3d at 873("We have repeatedly upheld dog sniffs that were conducted within a few minutes after a traffic stop ended."). Therefore, the minute-and-a-half detention here was a de minimis intrusion, and did not violate Norwood's Fourth Amendment rights.

III.

The judgment of the district court is affirmed.

_____