# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2281

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Eddie Garcia, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 9, 2010
Filed: July 21, 2010

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Eddie Navarro Garcia pled guilty to one count of possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). He reserved the right to appeal the district court's[1] denial of his motion to suppress. He argues that the officer illegally detained him and performed a warrantless search without consent. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Laurie Smith Camp, United States Judge for the District of Nebraska.

I.

At 1:55 p.m., Officer Aaron Wayne Hanson stopped Garcia for view obstructions hanging from the windshield of his truck, which was pulling a trailer. Advising Garcia and his passenger, Nancy Martin Perez, of the reason for the stop, Hanson obtained identification, registration, and proof of insurance. For safety and better hearing, Hanson asked Garcia to move behind the trailer. Garcia claimed they were traveling to Des Moines to start a restaurant.

At 2:01 p.m., Hanson returned to the truck, compared the vehicle identification number to the registration, and talked to Perez. She stated they were going to Illinois for two months. Hanson noted they had only two duffel bags, which seemed inconsistent with a two-month stay.

Around 2:04 p.m., Hanson performed data checks. Waiting for the results, Hanson asked to look inside the trailer. Garcia responded, "sure, sure." He unlocked the trailer. Both men went inside it for about 30 seconds. Hanson observed a table, sink, and other heavy, metal objects there.

Hanson then received partial results from the data checks but had to repeat Garcia's license check. At 2:16 p.m., Hanson confirmed that Garcia had a felony conviction for possession of a controlled substance, and Perez had been convicted recently of attempted murder.

At 2:20 p.m., seconds after completing the data checks, Hanson returned Garcia's paperwork and issued a verbal warning for the traffic offense. Garcia asked for the location of a pharmacy. The two men shook hands. Garcia started to turn away.

At 2:21 p.m., Hanson said, "I have another question for you, if you don't mind?" Garcia stopped and leaned toward Hanson. Hanson asked if he had any contraband in the vehicle or trailer. Garcia denied having any, except cash for gas. At 2:22 p.m., Hanson asked to search the truck and trailer because of the "huge drug problem" on the interstate. Garcia responded, "ok, ok, sure," and waved his hand toward the trailer.

Hanson then told Perez that she and Garcia were free to go. He asked if there was contraband in the truck or trailer. Perez said, "no, nothing." Hanson asked for permission to search the truck and trailer. She said, "yes." He directed Perez to stand by Garcia off the roadway.

Hanson examined the trailer's front exterior wall, which had a bump and sounded different when tapped. Measuring the wall from inside the trailer, he found that the interior wall appeared to be 18 inches shorter. Behind the interior wall he discovered a second wall. Hanson pulled it back, revealing packages of marijuana. He placed Garcia and Perez under arrest.

## II.

Garcia argues that the marijuana should be suppressed because (1) the initial stop was unconstitutionally prolonged, (2) the post-stop encounter was not consensual, and (3) the illegal detention tainted his consent to the search.

For a denial of a motion to suppress, this court reviews findings of fact for clear error and legal conclusions de novo. *United States v. McGlothen*, 556 F.3d 698, 701 (8th Cir. 2009). "This court will affirm the district court's denial of a motion to suppress unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." *United States v. Lopez-Mendoza*, 601 F.3d 861, 864 (8th Cir. 2010).

Garcia acknowledges that the initial stop was lawful but contends that Officer Hanson's questions turned the stop into an unlawful investigative detention. "A seizure that is justified solely by the interest in issuing a warning ticket can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). During a stop, the officer may detain the driver while completing "a number of routine but somewhat time-consuming tasks related to the traffic violation." *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999). "[T]he officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may search the vehicle." *Id.* These questions may be unrelated to the initial stop. *See United States v. Suitt*, 569 F.3d 867, 869, 871 (8th Cir. 2009), *distinguishing United States v. Peralez*, 526 F.3d 1115, 1120–21 (8th Cir. 2008) (officer unjustifiably more than doubled the time of traffic stop by interspersing drug interdiction questions with routine inquiries).

Officer Hanson's questions were reasonable. While running routine data checks, he asked Garcia's destination, the purpose of his trip, and to "take a quick peek" in the trailer, to which Garcia consented. "When a motorist gives consent to search his vehicle, he necessarily consents to an extension of the traffic stop while the search is conducted." *United States v. Rivera*, 570 F.3d 1009, 1013 (8th Cir. 2009). Seconds after receiving the data check results, he returned Garcia's paperwork and issued a warning. Hanson did not transform a routine stop into an investigative detention.

Garcia next asserts that he was illegally detained after receiving the warning because he did not consent to the post-stop encounter. Once an officer issues a warning, the stop is over. *Peralez*, 526 F.3d at 1120. "If the encounter becomes consensual it is not a seizure, 'the Fourth Amendment is not implicated, and the officer is not prohibited from asking questions unrelated to the traffic stop or seeking consent to search the vehicle.'" *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir.

2010), *quoting **United States v. Flores**, 474 F.3d 1100, 1103 (8th Cir. 2007). A seizure occurs if "a reasonable person would have believed that he was not free to leave." **United States v. Jones**, 269 F.3d 919, 925 (8th Cir. 2001); *see **Florida v. Bostick**, 501 U.S. 429, 434 (1991) ("[M]ere police questioning does not constitute a seizure"). In *Munoz*, this court found consent where Munoz assented to the trooper's request "for a moment of your time" after Munoz reached for the door handle to exit the trooper's car. **Munoz**, 590 F.3d at 921. Likewise, in *Suitt*, the deputy asked for "half a minute" to answer a few questions as Suitt was walking away. **Suitt**, 569 F.3d at 869.

The post-stop encounter here was consensual. After receiving the warning, Garcia asked about a pharmacy, shook hands with Hanson, and started to leave. Only then did Hanson ask, "I have another question for you, if you don't mind?" Garcia stopped, leaned into Hanson, and answered the question, indicating consent to further discussion. Until then, Hanson had detained Garcia as part of a valid traffic stop. Garcia's behavior indicated he felt free to leave. Because the initial stop was not unconstitutionally prolonged, and Garcia consented to the post-stop encounter, this court need not consider whether Hanson also had reasonable suspicion to prolong the stop. *See **United States v. Santos-Garcia**, 313 F.3d 1073, 1078 (8th Cir. 2002) (if encounter is consensual, then even without reasonable suspicion, officer may ask questions unrelated to stop and seek consent to search vehicle).

Finally, Garcia contends he did not consent to the search of the trailer. Whether consent is voluntary is a question of fact, reviewed for clear error, considering whether from the totality of the circumstances the officer reasonably believed the search was consensual. *See **United States v. Gallardo**, 495 F.3d at 982, 988 (8th Cir. 2007). The totality of the circumstances includes age, intelligence, education, influence of drugs, awareness of rights, length of detention, police threats, promises, or misrepresentations, whether the person was under arrest, where the consent occurs,

and any objection to the search.  *See **United States v. Esquivel***, 507 F.3d 1154, 1159 (8th Cir. 2007).

Garcia consented to the search, saying, "ok, ok, sure."  He was an adult who understood English, was not under the influence of drugs, and had prior arrest experience.  The whole encounter lasted less than 30 minutes.  Hanson made no threats, promises, or misrepresentations, and Garcia was not under arrest.  They were on a busy highway during the day.  Hanson told Perez that they were free to go and obtained her consent for the search.  Garcia watched silently during the search.  The district court properly held that Garcia's consent was voluntary.

### III.

The judgment of the district court is affirmed.

_____