# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1708
_____

United States of America

*Plaintiff - Appellee*

v.

James Rutledge

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Central
_____

Submitted: December 16, 2022
Filed: March 3, 2023
_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.
_____

LOKEN, Circuit Judge.

James Rutledge entered a conditional plea of guilty to conspiracy to distribute a controlled substance and possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He reserved the right to appeal the denial of his motion to suppress drugs and a gun seized from his rental vehicle after a traffic stop and incriminating statements he made later that day. On appeal, Rutledge argues the

district court[1] erred because police officers did not have an objectively reasonable basis to believe he committed a traffic violation and then unconstitutionally expanded the stop while a drug dog sniffed the exterior of the vehicle.  We affirm.

## I. Background

In the summer of 2020, Drug Enforcement Task Force officers investigated methamphetamine distribution around Winner, South Dakota.  Information from an informant and pen register trap and trace warrants of local dealer phones led Special Agent Alexa D'Acunto to believe Rutledge was transporting meth from Colorado to South Dakota using rental vehicles.  D'Acunto obtained a trap and trace warrant for a South Dakota phone number associated with Rutledge, and then a second warrant when that number switched to a different device in Colorado.  Tracking data showed the phone was traveling from Colorado towards Colombe, South Dakota.  D'Acunto instructed Task Force officers to conduct a traffic stop of the vehicle when they had probable cause to do so.

In Colombe, Trooper Dylan Dowling and BIA Agent Derek Parish waited for the tracked phone in an unmarked patrol vehicle near the intersection of U.S. Highways 183 and 18.  Highway 183 runs north-south through the intersection, becoming S.D. Highway 49 north of the intersection.  Highway 18 runs southeast-northwest through the intersection, joining Highway 183 to travel northwest of the intersection.[2]  When approaching the intersection heading north on Highway 183, a

---

[1]The Honorable Roberto A. Lange, Chief Judge of the United States District Court for the District of South Dakota, adopting the report and recommendation of the Honorable Mark A. Moreno, United States Magistrate Judge for the District of South Dakota.

[2]A photo of the intersection is available attached to the district court opinion.  United States v. Rutledge, No. 3:20-CR-30144-RAL, 2021 WL 5578526 (D.S.D. Nov. 30, 2021).

stop sign is located on the right side of the road, just before a curved turn that leads in a short distance to Highway 18. The turn can be used by a northbound car on Highway 183 wishing to go southeast on Highway 18. Some thirty yards later, another stop sign is on the left side of the road before the intersection, where a northbound vehicle can take a 120-degree turn onto Highways 183 and 18 heading northwest to Winner, or travel across the intersection onto S.D. Highway 49 heading due north.

Trooper Dowling, Patrol Sergeant John Lord, and Special Agent D'Acunto were witnesses at the suppression hearing. Trooper Dowling, an experienced law enforcement officer, testified to what he observed at the Colombe intersection. D'Acunto reported that the cell phone was nearing the intersection. At 4:50 a.m., Dowling saw a white van approach from the south on Highway 183. There was no other traffic. Dowling testified that the van came to a complete stop at the first stop sign but not at the second. He contacted other officers, advising the van failed to come to a complete stop and turned west on Highway 183. Trooper Jordan Anderson could not locate the van on Highway 183. Sergeant Lord, heading south on Highway 49, saw a white van matching Dowling's description, turned around, and initiated a traffic stop based on Dowling's report that the van had not come to a complete stop at the intersection.

Sergeant Lord described the traffic stop. Rutledge was driving the van. A female passenger was "scared" and "clearly nervous." Lord saw a red mini torch, commonly associated with drug use, sitting on the center console. He asked for Rutledge's license and registration; the passenger handed him the vehicle's insurance and rental agreement. Lord asked Rutledge to come to the patrol car, where Lord asked the "basic questions [officers] ask everybody," "where they were heading and where they were coming from." Rutledge said he was "kind of transitory right now," then provided an address in Boulder, Colorado that did not match the South Dakota address on his driver's license. Lord said Rutledge "fell asleep" and was "rubbing

-3-

his eyes a lot." Rutledge disputed not stopping at the stop sign. Lord told Rutledge he will be getting a warning ticket.

Less than ten minutes into the stop and eight minutes after Rutledge entered the patrol car, Trooper Anderson arrived with a narcotics dog, Demi. Lord informed Rutledge the dog was present. Rutledge "became aware, woke up, was tense, nervous." The two argued about Demi sniffing the van. Rutledge told Lord about another traffic stop while Lord continued to write up the traffic warning. Demi alerted on the rear driver's side of the van. Officers handcuffed Rutledge and Wilson, searched the van, and found drugs, drug-related items, and a locked safe. After transporting Rutledge to the local jail, Trooper Wes Fischer found a key to the safe in Rutledge's wallet and brought it to the scene. In the safe, officers found more drugs and a handgun. Later that day, Rutledge made incriminating statements when interviewed by Agent D'Acunto.

Rutledge moved to suppress physical evidence found during the vehicle search and his same-day statements as fruit of that poisonous tree. After a hearing, Magistrate Judge Mark Moreno issued a Report and Recommendation that the motion to suppress be denied. The district court adopted the Report and Recommendation. See United States v. Rutledge, No. 3:20-CR-30144-RAL, 2021 WL 5578526 (D.S.D. Nov. 30, 2021). Rutledge timely appealed the denial of his motion to suppress.

## II. Discussion

**A. The Initial Traffic Stop.** A police officer may stop a vehicle if he has an objectively reasonable basis to believe that the driver has committed a traffic violation. The officer's subjective intent in making the stop does not affect its Fourth Amendment validity. See, e.g., United States v. Sallis, 507 F.3d 646, 649 (8th Cir. 2007). It is well established that "a minor traffic violation provides probable cause for a traffic stop, even if it is mere pretext for a narcotics search." United States v.

Stachowiak, 521 F.3d 852, 855 (8th Cir. 2008); see Whren v. United States, 517 U.S. 806, 813 (1996); United States v. Williams, 429 F.3d 767, 771-72 (8th Cir. 2005).

Trooper Dowling testified that he saw Rutledge fail to come to a complete stop at the intersection. That is a violation of Section of Section 32-29-2.1 of the South Dakota Codified Laws:

> every driver of a vehicle approaching a stop intersection indicated by a stop sign shall come to a full stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection.

The intersection did not have a marked stop line or a crosswalk, so the appropriate inquiry is at what point a driver has a view of approaching traffic on the intersecting roadway. Rutledge argued that he complied with this statute when he came to a complete stop at the first stop sign. Dowling testified, supported by photos of the intersection from various perspectives, that Rutledge at the first stop sign could not see traffic approaching the intersection from the northwest on Highways 183 and 18. There was no contrary testimony. Crediting Dowling's testimony and "[h]aving viewed the videos submitted by the parties multiple times," the district court found that "a driver stopped at the first stop sign would have a very limited view of the traffic approaching the intersection from the northwest." Rutledge, 2021 WL 5578526, at *3. Therefore, Dowling had an objectively reasonable basis for concluding that Rutledge violated § 32-29-2.1 when he failed to come to a complete stop at the second stop sign.

1. On appeal, Rutledge argues the district court clearly erred in finding Trooper Dowling's testimony credible. Dowling had a motive to fabricate, Rutledge argues, citing Agent D'Acunto's direction to "develop probable cause." In addition,

Dowling's police report failed to note that the white van stopped at the first stop sign, and Dowling mistakenly told the other officers the van turned west on Highway 18.

This contention is without merit. Trooper Dowling was not told to fabricate, only to initiate a lawful traffic stop if there was probable cause to do so. As the Supreme Court and this court have repeatedly held, a motive to investigate other criminal activity does not taint a valid traffic stop. At the hearing, Dowling vigorously denied fabricating that he saw the white van fail to come to a complete stop. Neither the magistrate judge nor the district court even discussed this question, so it obviously was not pressed in the district court. The district court did discuss Trooper Dowling's mistake in reporting that the white van turned west at the intersection, concluding it was irrelevant because "the officers had an objectively reasonable basis for concluding that the van's driver violated the law." We agree. "We give great deference to a lower court's credibility determinations because the assessment of a witness's credibility is the province of the trial court." United States v. Wright, 512 F.3d 466, 471 (8th Cir. 2008) (quotation omitted).

2. Rutledge primarily argues that the traffic stop was illegal because it was based on an unreasonable mistake of law. Relying on what he views as the plain meaning of § 32-29-2.1, he argues, as he did in the district court, that failing to come to a complete stop at the second stop sign was not a violation of South Dakota law because "the statute does not require drivers to stop two times at one intersection."

This issue was a major focus at the suppression hearing. The parties submitted photos of the intersection at different times that suggest the highway signage may have changed. At the end of the hearing, the district court granted defense counsel's request for additional time to submit Highway Department evidence addressing this issue, but no further evidence other than additional photos was submitted. The record consists of multiple photos showing two stop signs, the first one some thirty yards before the intersection of Highway 183 and Highway 18. As explained, that first stop

sign controls a turn-off to Highway 18 before the intersection. We assume that Highway Department engineers saw traffic control or safety reasons for this first stop sign. For example, one photo shows a vehicle making an improper left turn off northwestbound Highway 18, presumably for quicker access to streets in Colombe south of the intersection and west of Highway 183.

In any event, whatever the merits of Rutledge's interpretation of the statute, Rutledge did not come to a complete stop *at the intersection* of Highways 183 and 18. As Highway 18 traffic does not have a stop sign at the intersection, it is the "favored" road. "Under the 'through highway' or 'boulevard' rule, as it is sometimes called, a driver approaching an intersection from an unfavored road [Hwy 183] must yield the right-of-way to drivers on the 'through highway' [Hwy 18] (SDCL 32–29–2) already in or approaching the intersection." Carpenter v. City of Belle Fourche, 609 N.W.2d 751, 756 (S.D. 2000). "An unfavored driver's duty to stop . . . is unqualified." Id. at 757. Thus, Dowling's testimony established that Rutledge violated § 32-29-2.1.

Neither the magistrate judge nor the district court discussed the interpretation of the statute Rutledge urges on appeal, so it obviously was not pressed in the district court. The district court opinions discuss the fact issue whether Dowling reasonably concluded that Rutledge could not see approaching traffic from the first stop sign, not the legal assertion that stopping at the first stop sign meant the statute was not violated as a matter of law. But even if this statutory interpretation issue was preserved for appeal, it is without merit. Trooper Dowling's conclusion that the statute requires drivers to come to a complete stop at two stop signs controlling different portions of a complex highway interchange was not unreasonable. "[I]t is well established that mistakes of law or fact, if objectively reasonable, may still justify a valid stop." United States v. James, 52 F.4th 1035, 1038 (8th Cir. 2022) (cleaned up).

**B. Was the Stop Unconstitutionally Expanded?**  Law enforcement may not prolong a traffic stop beyond the time needed to complete the purpose of the stop. See Rodriguez v. United States, 575 U.S. 348, 354-57 (2015).  Therefore, unless an officer develops reasonable suspicion while completing the traffic stop that evidence of a drug crime is concealed in the vehicle, he may not prolong the stop until a drug dog arrives and sniffs the vehicle's exterior.  See United States v. Suitt, 569 F.3d 867, 870 (8th Cir. 2009).  Here, Demi arrived ten minutes after Sergeant Lord stopped the white van, sniffed the exterior, and alerted before Lord completed a warning ticket for the traffic violation.  The district court found that the stop was not prolonged beyond what was reasonably necessary to complete the ticketing process and, in addition, concluded that Sergeant Lord had reasonable suspicion to extend the stop for the dog sniff.  See Rutledge, 2021 WL 5578526, at *4-5.  On appeal, Rutledge argues the traffic stop was impermissibly prolonged without reasonable suspicion.  Because we hold that the stop was not unnecessarily prolonged, we need not decide whether there was reasonable suspicion to extend it.

Video surveillance of the traffic stop confirms that Officer Anderson and Demi arrived at the scene approximately ten minutes into the stop.  When they arrived, Sergeant Lord was issuing Rutledge a warning, entering his Boulder address and the rental car information after resolving document conflicts and Rutledge's vague responses.  Thus, Lord was still "complet[ing] the purpose" of the stop when Demi arrived and alerted.  Suitt, 569 F.3d at 870.  Rutledge argues that Lord asked unrelated travel related questions that added time to the traffic stop.  However, travel-related questions do not impermissibly prolong a traffic stop when the officer is still completing the matter for which the stop was made.  See United States v. Callison, 2 F.4th 1128, 1131 (8th Cir. 2021).

The question whether a traffic stop was unnecessarily prolonged is fact intensive but the validity of a seizure is ultimately a question of law.  Our prior cases do not clarify the standard of review, and the parties ignore the issue.  Here, given the

undisputed facts regarding the length of the stop, particularly its short duration, and the reasons given for the time it took to almost complete the purpose of the stop before Demi alerted to the rear of the driver's side, the district court did not err in concluding that Sergeant Long did not unlawfully prolong the stop before Demi's alert gave the officers probable cause to arrest Rutledge and search the vehicle.

**C. The Custodial Statements.** We hold there was no Fourth Amendment violation before Rutledge made incriminating statements after being given Miranda warnings. Thus, the district court properly rejected his argument that the statements should be suppressed as fruit of a poisonous tree. There is no poisonous tree.

The judgment of the district court is affirmed.

_____