# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3665

_____

United States of America

*Plaintiff - Appellant*

v.

Chadwick Dean Grant

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 15, 2012
Filed: October 18, 2012

_____

Before MURPHY, BRIGHT, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A grand jury charged Chadwick Grant with possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Grant moved to suppress evidence seized during a search of his vehicle. The district court granted the motion, and the government appeals. We reverse and remand for further proceedings.

## I.

At approximately 10:00 p.m. on June 14, 2011, Sergeant Jeffrey Wilcynski of the Nebraska State Patrol stopped Grant's vehicle for speeding on eastbound Interstate 80. Wilcynski approached the passenger side of Grant's vehicle and informed him of the reason for the stop. Wilcynski asked Grant to join him in the patrol car while he prepared a warning ticket. While in the patrol car, Wilcynski questioned Grant about his travel. Grant said that he was returning home to Macy, Nebraska, after a trip to Denver, Colorado. Wilcynski also conducted standard checks on Grant and the vehicle, and he learned that Grant's criminal history included a drug-related conviction.

Wilcynski issued Grant a warning ticket and wished him a good night. Grant began to leave the patrol car but stopped to ask if he had his insurance documentation. Wilcynski assured Grant it was inside his vehicle, and Grant then exited the patrol car. After Grant was outside, Wilcynski stated, "Hey, I do have another question, do you mind coming back in?" Grant got back in the vehicle, and Wilcynski asked Grant about his criminal history and whether there were drugs in his car. Grant acknowledged a prior marijuana-related conviction, but denied that there were drugs in his vehicle.

Wilcynski then asked Grant if he could search the car, and Grant responded, "I'd rather not." When Wilcynski asked why, Grant explained, "I just want to leave, that's all." The following exchange ensued:

> Wilcynski: I think what we're going to do is, because of your—I mean, what would you think about it if I had a dog come and go around it? If he doesn't indicate anything, then we'll get you going.
>
> Grant: Okay.

| | |
|---|---|
| Wilcynski: | Is that all right? |
| Grant: | Sure. |
| Wilcynski: | Okay. |
| Grant: | I guess so. |

Wilcynski summoned a canine unit, which arrived twenty-two minutes later. The dog alerted to Grant's vehicle. Investigators then searched the car and found cocaine and cocaine base.

After he was indicted, Grant moved to suppress the evidence seized from his vehicle. Grant did not challenge the legality of the traffic stop or dispute that the dog's alert provided probable cause to search the vehicle. Grant's sole argument was that Wilcynski unreasonably prolonged the traffic stop for a dog sniff without Grant's consent and without probable cause or reasonable suspicion of criminal activity. As a result, Grant claimed, the detention of his person, the search of his vehicle, and the resulting seizure of evidence violated his rights under the Fourth Amendment. Following a hearing, a magistrate judge recommended denial of Grant's motion. Grant objected to the magistrate's recommendation, and the district court conducted a *de novo* review.

The district court framed the issue as "whether [Grant] was 'detained' in violation of the Fourth Amendment or whether he voluntarily agreed and consented to await the arrival of the drug K-9." In resolving this question, the court focused on Wilcynski's statement to Grant that if the dog did not indicate, "then we'll get you going." The court characterized these words as a statement that Wilcynski would "release" Grant if nothing happened, and reasoned that it sounded "more like a coerced consent and resulting detention than it does a consensual agreement." It was,

in the court's view, "hard to imagine that [Grant] really felt free to leave after that statement."

The court determined that Wilcynski's "question/statement" was "clearly coercive," and that its "message was clear: We are going to have you wait for the dog to arrive and search, and if it does not alert, you can leave." The court also determined that the follow-up questions and answers were "tainted" by the first statement, which "sent the message that [Grant] was to allow that process and in return would be allowed to go if nothing else transpired." After listening to a recording of the encounter, the court determined that Grant sounded as though he was "resigned to the sergeant's scenario of what would transpire," and that this analysis was supported by Grant's final statement, "I guess so." The court thus rejected the magistrate's recommendation and granted the motion to suppress, determining that "a detention occurred" and "consent was not freely and voluntarily given." The government appealed.

## II.

It is undisputed that Wilcynski lawfully stopped Grant based on probable cause that he was speeding. Grant also concedes that the dog's alert provided probable cause to search the vehicle. *See United States v. Bloomfield*, 40 F.3d 910, 919 (8th Cir. 1994) (en banc). The parties focus, as did the district court, on the period between Wilcynski's issuance of the warning and the dog's alert on the vehicle. The parties disagree, however, on the relevant inquiry and on the appropriate standard of review.

The government, noting that the purpose of the traffic stop ended when Wilcynski issued a warning, argues that the only question is whether the post-stop encounter was consensual in nature or an unlawful seizure under the Fourth

Amendment. Whether an encounter constitutes a seizure is reviewed *de novo*. *United States v. McKines*, 933 F.2d 1412, 1426 (8th Cir. 1991) (en banc).

Grant, on the other hand, argues that our review should be for clear error. He relies on consent-to-search cases, where the voluntariness of a consent to search "is a question of fact to be determined from the totality of the circumstances," *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973), and is reviewed for clear error. *United States v. Vinton*, 631 F.3d 476, 482 (8th Cir. 2011). Grant does not suggest that Wilcynski needed consent to conduct the dog sniff itself. Instead, Grant argues that the issue is whether he "voluntarily agreed to wait" for the canine unit. He submits that the voluntariness of consent to "police activity" is a question of fact reviewed for clear error.

We think the government properly frames the issue as whether Grant was seized during the post-stop encounter. An exterior dog sniff of a vehicle is not a search. *See Illinois v. Caballes*, 543 U.S. 405, 409-410 (2005). Thus, a law enforcement officer need not obtain consent to conduct a dog sniff during an otherwise lawful encounter, just as an officer does "not need any justifiable suspicion under the Fourth Amendment to legally conduct [a] dog sniff." *United States v. Suitt*, 569 F.3d 867, 870 (8th Cir. 2009). The relevant question is how to characterize the encounter in the period between Wilcynski's issuance of the warning and the dog's alert on Grant's vehicle.

Not all encounters between law enforcement and citizens implicate the Fourth Amendment. Rather, the Fourth Amendment prohibits only unreasonable "seizures." A seizure occurs "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *INS v. Delgado*, 466 U.S. 210, 215 (1984); *see Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). Under this standard, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S.

429, 434 (1991). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* (internal quotation omitted). A "consensual" encounter between law enforcement and a citizen triggers no Fourth Amendment scrutiny. *See Bostick*, 501 U.S. at 434. Whether an encounter is "consensual" is simply the inverse of the objective standard for existence of a seizure: "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual, and no reasonable suspicion is required." *Bostick*, 501 U.S. at 434 (internal quotation omitted).

The test for whether a person has been "seized" within the meaning of the Fourth Amendment is an "objective standard" that looks to whether a reasonable person would have believed that he was not free to leave. *Chesternut*, 486 U.S. at 574. This treatment of the question "ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached," and it "allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment." *Id.* The objective standard, which turns on a reasonable person's belief about the surrounding circumstances, calls for a "legal characterization that must be reviewed de novo." *McKines*, 933 F.2d at 1426. In conducting this *de novo* review, the district court's findings of historical fact are reviewed for clear error. *Id.*

There was no seizure when Grant first returned to the patrol car to answer additional questions. Grant conceded this point in the district court, and he acknowledges on appeal that at least a "brief period" after the traffic stop ended "could be characterized as a 'consensual encounter.'" The purpose of the stop was fulfilled when Wilcynski issued Grant a warning and wished him a good night. *See United States v. Garcia*, 613 F.3d 749, 753 (8th Cir. 2010). At that point, Wilcynski was the only officer present, and he did not touch Grant or display his weapon. Wilcynski had returned everything that Grant needed in order to depart, and

Wilcynski merely asked Grant if he would "mind" returning to the patrol car to answer another question. Such conduct by an officer does not effect a seizure under the Fourth Amendment. *See Garcia*, 613 F.3d at 753; *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010); *United States v. White*, 81 F.3d 775, 779 (8th Cir. 1996).

Grant argues, however, that Wilcynski effected a seizure when he "ignored Grant's desire to go, told Grant he was going to call a drug dog, and conditioned Grant's ability to leave on the dog's reaction." Like the district court, Grant focuses on the point when he refused consent to search and Wilcynski raised the prospect of a canine sniff.

The district court deemed "bothersome" and "clearly coercive" Wilcynski's statement to Grant that if the dog did not indicate, "then we'll get you going." The court found it "hard to imagine that [Grant] really felt free to leave after that statement," and thought that Grant "sound[ed] as though he [was] resigned to the sergeant's scenario of what would transpire." The relevant inquiry, however, is not subjective but objective: whether a reasonable person in Grant's position "would feel free to disregard the police and go about his business." *Bostick*, 501 U.S. at 434 (internal quotation omitted); *see also United States v. Morgan*, 270 F.3d 625, 630 (8th Cir. 2001) ("The district court found that Morgan did not feel free to leave, but an objective standard is employed to determine whether there has been a seizure."). An officer's use of language or tone indicating that compliance might be compelled can indicate a seizure. *See Mendenhall*, 446 U.S. at 554 (opinion of Stewart, J.). But there is "a constitutionally significant distinction between an official command and a request that may be refused." *United States v. Vera*, 457 F.3d 831, 835 (8th Cir. 2006). Our cases illustrate that context is important in drawing this distinction. *See United States v. Valle Cruz*, 452 F.3d 698, 706 (8th Cir. 2006) (holding that officer's statement to "sit tight," "when taken in context," did not effect a seizure).

Wilcynski's statement that "if [the dog] doesn't indicate anything, then we'll get you going," came immediately after he asked Grant what he would "think about it if I had a dog come and go around [the vehicle]." In context, Wilcynski's statement is reasonably viewed as an explanation of what would happen if Grant agreed to stay and permit the dog sniff. It was not in our view a statement that Wilcynski would "release" Grant if the dog did not indicate. The remaining colloquy reinforces this conclusion. After Grant responded with "Okay," Wilcynski made clear that he was seeking Grant's permission, asking whether it was "all right" with Grant to summon a dog. Grant said, "Sure," and "I guess so."

"The determination whether an encounter is consensual depends upon the unique factual nature of each case," and thus requires consideration of "all the circumstances." *United States v. Flores*, 474 F.3d 1100, 1103 (8th Cir. 2007). Grant's argument highlights one line in the exchange between Wilcynski and Grant, and gives insufficient weight to Wilcynski's predicate question ("what would you think about it"), and his follow-up question ("Is that all right?"). These aspects of the colloquy must be considered as part of the entire "circumstances surrounding the encounter." *Bostick*, 501 U.S. at 439. We conclude that a reasonable person in Grant's position would have understood that he could decline the officer's request.

Grant also cites his refusal of consent to search as evidence that a seizure occurred. According to Grant, Wilcynski's conduct made it clear that Grant's "consent to the officer's actions was not required." But a citizen's refusal of consent to search tends to show that a reasonable person would know he is not required to comply with an officer's requests. *See United States v. Bowman*, 660 F.3d 338, 344 (8th Cir. 2011); *United States v. Coney*, 456 F.3d 850, 858 (8th Cir. 2006). Grant refused Wilcynski's request for consent to search his vehicle, and Wilcynski honored that refusal. Grant's refusal of consent to search demonstrates that it was possible for him to say "no." A reasonable person in Grant's position would not have felt compelled to comply with Wilcynski's subsequent requests.

Grant also relies on *United States v. Jones*, 269 F.3d 919 (8th Cir. 2001), and *United States v. Beck*, 140 F.3d 1129 (8th Cir. 1998), both of which held that a police-citizen encounter became a Fourth Amendment seizure prior to a dog sniff. *See Jones*, 269 F.3d at 926; *Beck*, 140 F.3d at 1135-36. In *Beck*, a seizure occurred where an officer summoned a canine unit in the driver's presence and told the driver that a canine sniff would occur if the driver refused consent to search. 140 F.3d at 1135-36. Any doubt on the seizure question was resolved when the officer "ordered" the driver out of his vehicle and directed him to stand on the side of the road. *Id.* at 1136. In *Jones*, an officer followed the driver out of the patrol car after a traffic stop and requested permission to search his vehicle. 269 F.3d at 926. The driver refused consent, but the officer radioed for assistance in the driver's presence and told him in "declarative language" that "the drug dog *would inspect* his vehicle." *Id.* (emphasis added). These facts made "an even stronger case" for a seizure than *Beck*. *Id.* That the driver responded "fine" when told by the officer that he was going to call a canine unit did not preclude a determination of seizure, because the driver already knew that "a third officer and a narcotics detecting dog would arrive shortly." *Id.* A reasonable person in that case had no choice but to stay for the dog sniff.

Like the drivers in *Beck* and *Jones*, Grant did not consent to a search of his vehicle. But Wilcynski did not use the prospect of a canine sniff as a "threat" to induce consent to search. *See Coney*, 456 F.3d at 859 (distinguishing *Beck* on this basis). Nor did he tell Grant, through "declarative language," that a dog would examine his vehicle. *Cf. Jones*, 269 F.3d at 926. Although Wilcynski started to make a declarative statement–"I think what we're going to do"—he corrected himself and radioed for a canine unit only after asking Grant what he would "think about it," and confirming it was "all right" with Grant. Unlike the "terse response" of "fine" in *Jones*, offered only after the officer declared that he would call in a canine unit, Wilcynski received Grant's response of "sure" to a legitimate inquiry before summoning a drug dog. A reasonable person in Grant's position would not think that "compliance with the officer's wishes would be compelled." *Jones*, 269 F.3d at 926.

* * *

For these reasons, the district court's order suppressing evidence is reversed, and the case is remanded for further proceedings.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent. I would affirm the district court's ruling suppressing the evidence because the encounter between Grant and the police was coercive, not consensual.

I agree with the district court that "[i]t is hard to imagine that the defendant really felt free to leave." Once an initial traffic stop ceases, further detention is unreasonable unless supported by reasonable suspicion developed during the stop "or unless the continued encounter is consensual." *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010). An encounter is consensual if a reasonable person would feel free to "disregard the police and go about his business." *Florida v. Bostick,* 501 U.S. 429, 434 (1991). Conversely, when an officer's conduct is coercive such that a reasonable person would not feel free to leave, then the detention is a seizure. *United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001).

The majority too easily dismisses the fact that Officer Wilcynski's exchange with Grant regarding the dog sniff began as a declarative statement. After Grant denied consent for a search of his vehicle and said he'd like to leave, Wilcynski began to direct Grant, saying "I think what we're going to do is..." But he abruptly changed tack and asked Grant what he would think about a dog sniff. This exchange ended with Wilcynski stating he would "get [Grant] going" if the dog did not alert, thereby acknowledging that Grant had already stated he'd like to leave. Grant's responses to Wilcynski were "Okay," "Sure," and "I guess so." The last response seems to me

-10-

about as equivocal as you can get without saying, "I'd rather you not, but I don't feel as though I can refuse."

The majority points out that Grant successfully declined to consent to a search of his vehicle, indicating he knew he could refuse and thus his consent to the prolonged detention was voluntary. I might agree had the Wilcynski's language been clearer. Wilcynski asked, "Can I search the vehicle?" Grant responded in the negative. Had Wilcynski then followed up with a simple question: "Will you wait here for a dog sniff?" Grant may have felt free to respond in a similar, negative fashion. But Wilcynski did not pose a simple question. His declaratory language combined with a muddled question was followed by a promise to get Grant going. The reasonable interpretation of this conversation, by any listener in similar circumstances, was that Grant was not free to leave.

The majority is correct that the proper focus is not Grant's subjective feelings but instead, the objective measure of a reasonable person. Still, faced with these facts I agree with the district court that a reasonable person would not have understood he could "disregard the police and go about his business," but would have felt coerced to acquiesce. And if there are conflicting reasonable interpretations of the facts, it should be determined by the district court as the finder of fact, not by the appellate court. As the district court noted, the message was clear: "We are going to have you wait for the dog to arrive and search, and if it does not alert, you can leave." Can anyone really say that a reasonable person in this situation could have defied the police by getting out of the squad car, walking back into his vehicle, and driving away? No way! I would affirm the district court's suppression of the evidence.

_____

-11-