# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2265

_____

United States of America

*Plaintiff - Appellant*

v.

Joshimar Rodriguez Lozano

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 14, 2019
Filed: February 26, 2019

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Joshimar Rodriguez Lozano ("Rodriguez") was indicted for being an illegal alien in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). Before trial, the district court granted Rodriguez's motion to suppress, finding the encounter with law enforcement was not consensual at its inception and did not become consensual at any time before Rodriguez's arrest.

Because we find the evidence in the record establishes Rodriguez's encounter with law enforcement was consensual and Rodriguez consented to the pat-down search, we reverse.

## I.    Background

On October 13, 2017, at approximately 1:18 a.m., Officer Brandon Condon, a West Des Moines, Iowa, police officer, arrived at an apartment complex after receiving a citizen's report of suspicious activity involving "two black males walking around."  While driving through the parking areas of the complex, Officer Condon saw Rodriguez and Rodriguez's friend, M.A.  Rodriguez, who is Hispanic, was in high school at the time.  M.A. is a juvenile black male.  M.A. testified that in April 2018, he had recently turned 17 years old and will graduate from high school in 2020.  M.A. and Rodriguez attend the same high school.  The parties presented no direct evidence of Rodriguez's age prior to the time the court entered its suppression order.[1]

M.A. testified that Officer Condon parked his patrol car along the curb, approximately 15 to 20 feet behind Rodriguez and M.A., who were walking from M.A.'s apartment and heading toward Rodriguez's apartment.  M.A. identified the vehicle as a police car.  Officer Condon exited his vehicle and approached Rodriguez and M.A.  Officer Condon called their attention by saying something to the effect of

---

[1]Rodriguez has moved to strike the portions of the government's brief and evidence in the record submitted after the suppression order was entered that contain evidence of Rodriguez's age.  Generally, we consider only evidentiary materials that were before the district court at the time the decision was made.  Von Kahl v. United States, 242 F.3d 783, 788 (8th Cir. 2001) ("recogniz[ing] a 'rarely exercised ... narrow exception' to the general rule that the appellate record is limited to the record made below").  It is unnecessary for us to take judicial notice of Rodriguez's age, as requested by the government, because Rodriguez's exact age is immaterial to resolution of the legal issues on appeal.  The motion to strike and request to take judicial notice are denied as moot.

"Hey, guys." M.A. interpreted Officer Condon's words as a request to speak with them. He testified he was unsure if he was free to walk away from the officer at that point.

Once Officer Condon, Rodriguez, and M.A. were in close proximity, Officer Condon asked them either what was going on or why they were out so late and also requested their names. Rodriguez and M.A. provided their names. Officer Condon communicated their names back to the department. M.A. testified he believed the officer appeared because of a report made by a neighbor. Rodriguez and M.A. told the officer they were walking to Rodriguez's apartment for a sleep over. The officer learned where Rodriguez and M.A. went to school and they talked about the sports teams Rodriguez and M.A. were on. M.A. testified that Officer Condon was generally "friendly" and was not "overaggressive." After the small talk, Officer Condon offered to give Rodriguez and M.A. a ride to Rodriguez's apartment. Both Rodriguez and M.A. accepted Officer Condon's offer.

Before allowing Rodriguez and M.A. in his patrol car, Officer Condon advised Rodriguez and M.A. that he would have to pat them down for his safety. Neither Rodriguez nor M.A. protested the pat-down. M.A. testified that Officer Condon told them to lift their arms. Officer Condon testified Rodriguez lifted his arms without being asked to do so. Officer Condon noticed that Rodriguez moved his arms but was not moving his feet very far apart to facilitate the pat-down of his lower body. Officer Condon directed Rodriguez to spread his legs once or twice. After Rodriguez complied, Officer Condon discovered an item concealed in the groin area of Rodriguez's pants. Upon feeling the item, Rodriguez admitted it was a gun. Officer Condon retrieved the gun when it fell down Rodriguez's pant leg. He then immediately called for backup, ordered M.A. to get on the pavement, and handcuffed Rodriguez. M.A. was questioned and released. Rodriguez was taken into custody.

-3-

Rodriguez was charged with being an illegal alien in possession of a firearm and ammunition. He filed a motion to suppress all evidence pertaining to the firearm, asserting Officer Condon's contact with Rodriguez and M.A. constituted an unconstitutional seizure. The district court agreed and granted Rodriguez's suppression motion. The government filed this interlocutory appeal.

## II.    Discussion

"[T]he Fourth Amendment prohibits only unreasonable 'seizures.'" United States v. Grant, 696 F.3d 780, 784 (8th Cir. 2012). "A seizure occurs 'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Id. (quoting INS v. Delgado, 466 U.S. 210, 215 (1984)). Under this standard, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id. (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)). By contrast, "[s]o long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual, and no reasonable suspicion is required." Id. (quoting Bostick, 501 U.S. at 434). "A 'consensual' encounter between law enforcement and a citizen triggers no Fourth Amendment scrutiny." Id.

The burden of proving that an encounter was consensual rests with the government. United States v. Garcia, 888 F.3d 1004, 1008 (8th Cir. 2018) (citing United States v. Aquino, 674 F.3d 918, 923 (8th Cir. 2012)). We review whether an encounter amounted to a seizure *de novo*. Grant, 696 F.3d at 784 (citing United States v. McKines, 933 F.2d 1412, 1426 (8th Cir. 1991)).

When reviewing the totality of the circumstances in the context of whether an encounter was consensual or if it ripened into a seizure, we have considered seven non-exclusive factors:

[O]fficers positioning themselves in a way to limit the person's freedom of movement, the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an officer's indication the person is the focus of a particular investigation.

Garcia, 888 F.3d at 1009 (quoting Aquino, 674 F.3d at 923). Officer Condon was the only responding officer to the suspicious activity report and did not position himself in a way to restrict Rodriguez's or his friend's movement. Officer Condon did not draw his weapon, but rather called out to get the attention of Rodriguez and M.A. Rodriguez and M.A. met up with the officer. Officer Condon asked for their names, inquired about what they were doing outside given the early morning hours and in response to the suspicious activity report, and made small talk. When Rodriguez and M.A. explained they were walking to Rodriguez's apartment, Officer Condon investigated no further. M.A. confirmed the officer was friendly to them. Under these circumstances, the encounter was consensual.

The district court's extensive and virtually exclusive focus on Rodriguez's high school age was in error. "The test for whether a person has been 'seized' within the meaning of the Fourth Amendment is an 'objective standard.'" Grant, 696 F.3d at 784 (quoting Michigan v. Chesternut, 486 U.S. 567, 574 (1988)). Having an objective standard helps to ensure Fourth Amendment protections do "not vary with the state of mind of the particular individual being approached" and "allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment." Id. at 784–85 (quoting Chesternut, 486 U.S. at 574). While we have considered an individual's age and mental ability when determining whether consent is voluntary, United States v. Dunning, 666 F.3d 1158, 1165 (8th Cir. 2012) (quoting United States v. Quintero, 648 F.3d 660, 667 (8th Cir. 2011)), and the Supreme Court has considered age in the context of custodial interrogation, J.D.B. v. North Carolina, 564 U.S. 261 (2011), we have not applied any standard other than

an objective one that examines whether a reasonable person would have felt free to leave when determining whether a "seizure" occurred. Using that standard and the seven non-exclusive factors identified earlier, the district court erred in finding Rodriguez and M.A. were seized within the meaning of the Fourth Amendment.

After it was apparent Officer Condon had completed his investigation of the suspicious activity report, Officer Condon offered Rodriguez and his friend a ride to Rodriguez's apartment. Only after Rodriguez and his friend accepted were they asked to submit to a safety pat-down to check for weapons. Rodriguez and M.A. agreed to the pat-down as a condition of getting a ride in the officer's patrol car. We have recognized it is not an unreasonable practice for a law enforcement officer to "conduct a pat-down search before a person enters his police car to protect officer safety." United States v. Espinoza, 885 F.3d 516, 524 (8th Cir. 2018).

Offering Rodriguez and M.A. a ride did not turn what was a consensual encounter into a seizure or otherwise implicate the Fourth Amendment. Rodriguez neither verbally nor nonverbally protested the requested pat-down. M.A. testified he thought they responded to Officer Condon's request by saying "yeah." Rodriguez willingly lifted his arms to permit Officer Condon to perform the pat-down. He did not entirely resist Officer Condon's requests to move his feet further apart. Rodriguez never indicated, verbally or nonverbally, a desire to walk away from Officer Condon. Rodriguez presented no evidence demonstrating his consent to the pat-down was coerced or made under duress. The record establishes that the pat-down search was an objectively reasonable measure to protect officer safety. The district court erred in finding a Fourth Amendment violation.

## III. Conclusion

Accordingly, we reverse the district court's grant of the motion to suppress.

_____