# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-2108

_____

United States of America

*Plaintiff - Appellee*

v.

Bruce Terrell Sanford

*Defendant - Appellant*

_____

No. 23-2186

_____

United States of America

*Plaintiff - Appellee*

v.

Houston Simmons, III

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern

_____

Submitted: February 16, 2024
Filed: July 16, 2024
[Published]

_____

Before LOKEN, COLLOTON[1] and KELLY, Circuit Judges.
_____

PER CURIAM.

Co-defendants Bruce Sanford and Houston Simmons, III, each entered a conditional guilty plea to one count of possessing a firearm after having been convicted of a felony, 18 U.S.C. §§ 922(g)(1), 924(a)(2), reserving the right to appeal the denial of their motions to suppress. They now appeal, and we affirm.

I.

On September 5, 2021, the owner of a nightclub in Waterloo, Iowa, texted Waterloo Police Department (WPD) Officer Amira Ehlers to say that two men were "smoking and drinking" in a car in front of the club. Officer Ehlers texted back, asking for a description of the car, but she did not receive a response before she began driving to the club. When Ehlers arrived, she parked in the traffic lane of the street, in front of the main entrance, as she usually did when responding to calls from this location. Ehlers put on her amber warning lights and got out of her squad car to speak with the club's owner, who pointed to a blue Kia sedan parked at the curb in front of the club. By this point, WPD Sergeant Spencer Gann had also arrived. He parked in the street directly behind Ehlers' squad car and asked her which vehicle was the subject of the call. Ehlers told him it was the Kia.

As Ehlers approached the Kia, the driver's side window was down, and she saw two men—Sanford and Simmons—one in the driver's seat and one in the passenger seat. She also smelled marijuana coming from the Kia. The officers ordered Sanford and Simmons out of the car, searched it, and found marijuana, a large amount of cash, and a handgun.

_____

[1]Judge Colloton became chief judge of the circuit on March 11, 2024. See 28 U.S.C. § 45(a)(1).

At the district court,[2] both Sanford and Simmons filed motions to suppress.[3] They argued they were unlawfully seized when the officers "completely blocked in the Kia" at the curb in a manner that prevented them from leaving. And because the alleged seizure occurred before Ehlers smelled marijuana, all evidence seized from the Kia must be suppressed as a result.

After an evidentiary hearing, the district court made specific findings about the location of each vehicle parked in front of the club to determine whether the location of the squad cars prevented the Kia from leaving the scene. It found that the Kia was parked alongside the curb, and that there was an empty parking space directly in front of it large enough to accommodate another vehicle. In front of that empty space was an SUV. Ehlers parked her squad car in the street parallel to the empty space. Gann parked his squad car behind Ehlers' car and alongside the Kia. No car was parked immediately behind the Kia, either alongside the curb or in the traffic lane.

---

[2]The Honorable C.J. Williams, then District Judge, now Chief Judge, United States District Court for the Northern District of Iowa, adopting in relevant part the findings and recommendations of the Honorable Mark A. Roberts, United States Magistrate Judge for the Northern District of Iowa.

[3]Simmons filed his motion first. After an evidentiary hearing, the district court adopted the magistrate judge's recommendation that the motion be denied. Sanford did not make his initial appearance on the superseding indictment until after the proceedings on Simmons' motion to suppress were concluded. Sanford then filed his own motion, in which he sought to raise arguments "identical" to those raised by Simmons. As the magistrate judge explained, "Sanford's motion seeks to 'piggyback' on [Simmons'] motion to suppress," and "Sanford does not wish to reopen the record or assert arguments that are new or different from those made by [Simmons]." The magistrate judge recommended that Sanford's motion be denied for the same reasons that Simmons' motion had been denied. The district court adopted that recommendation as well. Because Sanford simply adopted Simmons' arguments and the district court relied on the same evidentiary record to decide both motions, we do not distinguish between them.

Based on these findings, the district court concluded that Sanford and Simmons were not unlawfully seized prior to Ehlers approaching the Kia and smelling marijuana coming from inside it. It noted that the Kia's "most usual and convenient path of travel from the curb to the street" was blocked because of the position of the officers' squad cars. But relying on photographs and video footage of the scene that night, the court found that the Kia could have backed up along the curb or into the adjoining driveway, without facing any obstacle, despite the placement of the squad cars.

The district court also addressed the alternative argument that no reasonable person in the Kia would have felt free to leave. It found that the arrival of armed and uniformed law enforcement officers in marked cars with flashing warning lights was insufficient, without more, to lead a reasonable person to believe they could not leave the scene, and it denied the motions.

## II.

"We review the denial of a motion to suppress de novo but review underlying factual determinations for clear error." United States v. Soderman, 983 F.3d 369, 373 (8th Cir. 2020) (quoting United States v. Robbins, 682 F.3d 1111, 1115 (8th Cir. 2012)). "We will affirm the denial of a motion to suppress unless the district court's decision was unsupported by substantial evidence, was based on an erroneous interpretation of applicable law, or was clearly mistaken in light of the entire record." Id. at 373–74 (quoting United States v. Murillo-Salgado, 854 F.3d 407, 414 (8th Cir. 2017)).

On appeal, Sanford and Simmons continue to argue that the officers "completely blocked" the Kia in. But neither explains why the district court's findings to the contrary are clearly erroneous. After reviewing the record, including the photographs, video footage, and testimony, we see no basis for overturning the district court's findings. See United States v. White, 41 F.4th 1036, 1038 (8th Cir. 2022) ("We will reverse a finding of fact for clear error only if, despite evidence

-4-

supporting the finding, the evidence as a whole leaves us with a definite and firm conviction that the finding is a mistake." (quoting United States v. Holly, 983 F.3d 361, 363 (8th Cir. 2020))).

We also agree with the district court that a reasonable person in defendants' position would have felt free to leave. See United States v. Lillich, 6 F.4th 869, 875 (8th Cir. 2021) (explaining that a Fourth Amendment seizure occurs only when, based on "all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave" (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980))); United States v. Lozano, 916 F.3d 726, 729 (8th Cir. 2019) ("We review whether an encounter amounted to a seizure *de novo*." (citation omitted)). Defendants rely heavily on their assertion that they were "completely blocked" in by the squad cars, but we have found no clear error in the district court's finding otherwise. They also point out that the officers arrived at the club in uniform and armed, with the warning lights flashing on their squad cars. But these factors alone are insufficient to make a reasonable person believe they would not be free to leave the area of the club. The positioning of the marked squad cars limited the options for the Kia's egress, but Sanford and Simmons point to no other factors to support their assertion that they were seized after the officers arrived at the club but before Ehlers smelled marijuana. See Lozano, 916 F.3d at 729 (identifying factors courts may consider when determining whether an encounter with law enforcement "ripened into a seizure").

III.

We affirm the judgment of the district court.

_____