# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1263

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Veronica Maria Sallis, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 5, 2007
Filed: November 2, 2007

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Veronica Maria Sallis appeals the denial of her motion to suppress and sentence following her conditional plea of guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). We affirm.

I.

On the morning of December 21, 2005, a black woman entered the Wells Fargo Bank in Hopkins, Minnesota, and wrote a demand note on a deposit slip which stated: "give me the money or I'll shot you Don't try anything stupid Is your life worth It

think[.]" The woman passed the note to a teller, the teller gave the woman $1,359.00, and the woman exited the building. At 10:02 a.m., Officer James Stromberg of the Minnetonka, Minnesota Police Department received a police radio transmission reporting that the Wells Fargo Bank in Hopkins had just been robbed. The dispatch described the bank robber as a black female wearing black clothes and driving a tan Pontiac Grand Am. At the time, Stromberg was on patrol near the border between Hopkins and Minnetonka, and he proceeded to the border area to watch for the suspect. At 10:06 a.m., approximately four minutes after the initial robbery report, Stromberg saw a black woman standing outside of a tan or gold Pontiac Grand Am in front of the Brentwood Park Townhomes, located about one-half to three-quarters of a mile from the Wells Fargo Bank. The woman was wearing a coat with a fur-trimmed hood pulled up over her head. Stromberg radioed to dispatch his observations and intention to investigate and then returned to where he had seen the woman and the vehicle. However, by the time Stromberg made it back to the Brentwood Park Townhomes, the car and the woman were gone. Stromberg radioed this information to dispatch and requested a stop of the vehicle.

Meanwhile, Sergeant David Riegert, a Minnetonka police officer, who had also received the dispatches about the bank robbery and driven to the border area of Minnetonka and Hopkins, heard Officer Stromberg's transmission about a possible suspect in a tan Pontiac Grand Am leaving the vicinity of the Brentwood Park Townhomes. While going westbound on Highway 7, Riegert saw a tan Pontiac Grand Am traveling eastbound away from the Brentwood Park Townhomes. According to Sgt. Riegert, the driver and sole occupant of the car was a black woman, who appeared to have fur lining the hood of her coat. Riegert made a U-turn and followed the Grand Am eastbound on Highway 7. Riegert reached speeds of 80 to 85 miles per hour as he caught up to the vehicle. Then, Riegert observed the vehicle make a U-turn to travel west, whereupon he made a U-turn in the median to follow. Riegert paced the vehicle traveling at rates varying from 60 to 63 miles per hour in a 55 miles per hour speed zone as the vehicle continued westbound and exited onto Highway 169. Shortly

after going onto Highway 169, Riegert activated the patrol car's emergency lights to make a stop but did not turn on the siren. Riegert then followed two-car-lengths behind the vehicle for more than one mile until the Grand Am pulled off to the right and stopped, straddling the fog line, partly on the shoulder and partly in the right lane. Riegert waited to approach the car until Officer Stromberg, who had heard Riegert's radio reports and proceeded to the scene, arrived. According to Riegert, he pulled the vehicle over because of the information radioed in by Stromberg and the driver was speeding.

Stromberg arrived at the scene five to six minutes after Riegert made the stop. The officers decided to approach the vehicle in a modified high-risk fashion with their weapons drawn but not raised. Officer Stromberg went to the driver's door and asked the driver for a driver's license. Stromberg recognized the driver as the woman he had seen at the town home complex. The woman was identified as the defendant, Veronica Sallis. Stromberg advised Sallis that she matched the description of the Wells Fargo Bank robbery suspect. Sallis responded that she was coming from the Knollwood Shopping Mall. Upon Stromberg's request, Sallis exited the vehicle, and she was pat searched and her vehicle was searched for weapons. The officers observed a dark knit stocking cap with cut out eye holes in the passenger seat area.

Officer Stromberg noticed the odor of intoxicants on Sallis's breath and that she appeared confused and stumbled over her words during their four- to five-minute conversation. Based on his experience, Stromberg suspected that Sallis was intoxicated. The officers asked Sallis to perform several field sobriety tests. Sallis failed the heel-to-toe walking test, a one-leg-stand test, and two of the three aspects of the eye-gaze nystagmus test. Sallis also failed a preliminary breath test when she refused to provide an adequate sample. At approximately 10:45 a.m., Sallis was arrested for driving while impaired, and she was handcuffed, searched, and taken to the Minnetonka Police Department. Sallis submitted to a breath test at approximately 11:42 a.m., which registered a .13 blood-alcohol content. Sallis was later transferred to the Hopkins Police Department. There, Federal Bureau of Investigations Special

Agent Dave Rapp advised Sallis of her <u>Miranda</u> rights, and Sallis confessed to him that she had robbed the Wells Fargo Bank in Hopkins.

On January 18, 2006, Sallis was charged with one count of bank robbery in violation of 18 U.S.C. § 2113(a). Sallis moved to suppress evidence seized pursuant to the vehicle stop, which she alleged violated the Fourth Amendment because she was not stopped for speeding and police officers did not have a reasonable articulable suspicion of criminal activity when they stopped her vehicle. The district court,[1] adopting the report and recommendation of the magistrate judge,[2] denied the motion concluding that the vehicle stop did not violate Sallis's Fourth Amendment rights because Officer Riegert had: (1) reasonable suspicion of a traffic violation for speeding and (2) reasonable articulable suspicion that the driver had been involved in a bank robbery in that the vehicle and the driver met the description of the robbery suspect and were observed within close proximity to the crime scene. Sallis thereafter conditionally pled guilty, reserving her right to appeal the denial of her motion to suppress. At sentencing, the district court, over Sallis's objection, increased Sallis's base offense level by two levels for making a "threat of death" under United States Sentencing Guidelines ("Guidelines") section 2B3.1(b)(2)(F) based on the note Sallis presented to the bank teller during the course of the robbery. <u>See</u> United States Sentencing Commission, <u>Guidelines Manual</u>, § 2B3.1(b)(2)(F) (Nov. 2006). The district court imposed a Guidelines sentence of 37 months with a three-year term of supervised release and ordered $1,359.00 in restitution. Sallis brings this appeal.

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

[2]The Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

## II.

Sallis claims that the vehicle stop violated the Fourth Amendment, contending that the district court's contrary conclusion is error in two ways. First, the district court clearly erred in finding that the vehicle stop was based on a traffic violation because Officer Riegert actually stopped the vehicle to investigate the bank robbery. Second, the district court's determination that the stop was justified on the basis of Officer Riegert's reasonable articulable suspicion that the driver had been involved in a bank robbery was error because the description of the suspect in the police alert was not sufficiently particular to justify the stop.

We review the denial of a motion to suppress de novo and its underlying factual determinations for clear error, United States v. Torres-Lona, 491 F.3d 750, 755 (8th Cir. 2007), reversing "only if the district court's decision is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006), cert. denied, 127 S. Ct. 1504 (2007) (internal quotation omitted).

"An officer has probable cause to conduct a traffic stop when he observes even a minor traffic violation. 'This is true even if a valid traffic stop is a pretext for other investigation.'" United States v. Coney, 456 F.3d 850, 855-56 (8th Cir. 2006) (internal citation omitted) (quoting United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002)); see Whren v. United States, 517 U.S. 806, 813 (1996) (holding that an officer's subjective intentions for conducting a traffic stop "play no role in ordinary, probable-cause Fourth Amendment analysis"); United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007) ("[T]he constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officer involved, and the subjective intentions of the officer making the stop are irrelevant in determining the validity of the stop."); United States v. Andrews, 465 F.3d 346, 347 (8th Cir. 2006) (per curiam) ("[T]he fourth amendment is not violated if an objectively good reason for a traffic

-5-

stop exists, whatever the actual subjective motive of the officer making the stop may have been."); United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996) (finding a traffic stop for failing to wear seatbelts is valid "even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot").

When police officers have an objectively reasonable basis to believe that a driver is speeding, this court has found probable cause to conduct a traffic stop and has held that the officers' subjective intentions in making the stop did not affect the stop's validity for purposes of the Fourth Amendment. See United States v. Pereira-Munoz, 59 F.3d 788, 790-91 (8th Cir. 1995) (rejecting defendant's challenge of vehicular stop for speeding as pretextual because defendant did not dispute that he was speeding and "[s]o long as the officer is doing nothing more than he is legally permitted and objectively authorized to do, his actual state of mind is irrelevant for purposes of determining the lawfulness of a stop"); United States v. Stapleton, 10 F.3d 582, 583-84 (8th Cir. 1993) (holding that police officers had probable cause to stop defendant's automobile once they determined that it was exceeding the speed limit, regardless of whether an unverified anonymous tip that the vehicle was being used to transport crack cocaine was sufficient, by itself, to establish probable cause and whether officers would ordinarily stop a car exceeding the speed limit by five to ten miles per hour). Because Sallis does not dispute that she was speeding, Pereira-Munoz and Stapleton establish that Officer Riegert's actual motivation for stopping Sallis's vehicle is not relevant. Therefore, we hold that the district court's finding that there was a traffic violation is supported by the evidence, and, as such, there was probable cause to stop Sallis's vehicle. Accordingly, the district court properly denied the motion to suppress.

III.

Sallis next argues that the district court erred in applying the sentence enhancement pursuant to Guidelines section 2B3.1(b)(2)(F). Sallis asserts that the demand note that she handed to the teller stating that she would shoot the teller if the money was not handed over is insufficient to warrant application of the enhancement because it was not accompanied by any actions suggesting that she had the means or intent to shoot.

"We review the district court's interpretation and application of the Guidelines de novo." United States v. Minnis, 489 F.3d 325, 332 (8th Cir. 2007). The Guidelines authorize a two-level enhancement "if a threat of death was made" in the course of a robbery. USSG § 2B3.1(b)(2)(F). The commentary to section 2B3.1 instructs that a "threat of death . . . may be in the form of an oral or written statement, act, gesture, or combination thereof" and that "the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply. For example, an oral or written demand using words such as . . . 'Give me the money or I will shoot you' . . . would constitute a threat of death." USSG § 2B3.1, comment. (n.6). The application note also directs a sentencing court to "consider that the intent of the provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." Id.

In this case, it is undisputed that, in the course of robbing the Wells Fargo Bank in Hopkins on December 21, 2005, Sallis gave the victim teller a note that read: "give me the money or I'll shot you Don't try anything stupid Is your life worth It think[.]" The first phrase in Sallis's note, "give me the money or I'll shot you," is, but for the spelling error, identical to the example contained in the commentary to section 2B3.1, "Give me the money or I will shoot you." See United States v. Gallimore, 491 F.3d 871, 876 n.3 (8th Cir. 2007) ("The commentary is authoritative as to the meaning of

a sentencing guideline.") (citing Stinson v. United States, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.")); United States v. Mooney, 425 F.3d 1093, 1100-01 (8th Cir. 2005) (en banc) (noting that, despite the now advisory nature of the Guidelines, the commentary "retains its value" in "interpret[ing] the guidelines and . . . assist[ing] courts in their application"), cert. denied, 126 S. Ct. 2889 (2006). The phrase "Is your life worth It[?]" further colors the demand note as a "threat of death" under section 2B3.1(b)(2)(F). Moreover, Sallis's intent is "immaterial" because we apply an objective test in determining whether the enhancement should apply. United States v. Cadotte, 57 F.3d 661, 662 (8th Cir. 1995) (per curiam). We conclude that Sallis's note indicating that she would shoot if the teller did not comply with Sallis's demand amounted to a threat of death. Therefore, the district court appropriately applied a two-level enhancement for a threat of death under section 2B3.1(b)(2)(F).

## IV.

For the reasons given, we affirm the district court's denial of Sallis's motion to suppress and her sentence.

_____