# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-2377

_____

United States of America

*Plaintiff - Appellee*

v.

William Joseph Kennedy

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: January 12, 2022
Filed: June 3, 2022

_____

Before COLLOTON, KELLY, and KOBES, Circuit Judges.

_____

KELLY, Circuit Judge.

William Joseph Kennedy entered a conditional plea of guilty to one count of possession with intent to distribute methamphetamine and reserved his right to

appeal the denial of his motion to suppress. The district court[1] sentenced Kennedy to 216 months of imprisonment followed by a five-year term of supervised release. Kennedy appeals both the denial of his motion to suppress and his sentence.

I.

At approximately 3:15 a.m. on January 12, 2020, Norwalk Police Officer Nick Frye saw a black car "brake excessively" as it passed him. Frye relayed this information to Officer Andrew Jackson, who was in a separate patrol car, and told him to watch for the black car. Jackson then saw the car pull into a driveway, shut off its lights, and, after a few minutes, drive away.

As Jackson followed the black car, he saw a man and a woman with backpacks walking down the street in the same direction. He also noticed that the car's license plate frame concealed the registration tag, in violation of Iowa Code § 321.37(3). Jackson initiated a traffic stop, and asked the driver, Chelsea Kerr, for her license. Kerr said she did not have it with her, but she provided her name, date of birth, and current address upon request. Jackson noticed that Kerr's hands were visibly shaking as they spoke. Jackson also asked the passengers for their names. The front seat passenger identified himself as Kennedy, and the back seat passenger gave the name Joseph Robbins. Jackson returned to his patrol car to run Kerr's information through the National Crime Information Center database.

By this time, Frye had arrived at the scene. While Jackson ran Kerr's information, Frye watched as the backseat passenger "slouch[ed] from side to side" and made "furtive movements." Frye approached the car and initiated conversation with the man in the backseat, who again identified himself as Robbins. Frye knew Joseph Robbins, and he concluded that the man in the backseat was not Joseph Robbins. Frye then asked Kerr "who they had dropped off" when they pulled in the

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

driveway. Kerr said that she only met them earlier that night in a hotel room and they asked for a ride to Norwalk. She only knew the man as "Danny" and did not know who the woman was.

Frye returned to Jackson's patrol car and told Jackson it was not Robbins in the backseat. By that time, Jackson had confirmed that Kerr had a valid driver's license, but also learned she had an outstanding arrest warrant. Jackson also discovered that both Kennedy and "Joseph Robbins" had suspended driver's licenses. The officers arrested Kerr and placed her in Jackson's patrol car. Frye then spoke to the men, who indicated someone would be coming to get the car. Frye said to let him know their "ETA." Later, the officers determined that the backseat passenger was Matthew McNeer.

Frye then asked Kennedy to step out of the car, which he did, and asked him if he had "any weapons on him." Kennedy said no, and Frye asked if he could pat him down "to make sure." In response, Kennedy raised his hands above his head, and Frye commenced a pat down. When he felt a bulge in Kennedy's left pants pocket, Frye asked Kennedy what it was. Kennedy said he had "keys and other stuff," and he started taking items out of his pocket, including $2,855 in cash and a black digital scale. Frye also noticed that Kennedy's jacket pocket was open. He shined his flashlight into the open pocket and saw "a clear glass smoking device with burnt residue [which he] believed to be methamphetamine." Frye detained Kennedy and placed him in the back of his patrol car, telling Kennedy that he was not under arrest but was detained for the "meth pipe" in his open jacket pocket.

Frye returned to the black car to search the front passenger seat area. He found several baggies filled with a "white crystalized substance," which he believed to be methamphetamine, and more cash. Frye then read Kennedy his Miranda rights, which Kennedy said he understood, and told him he was "being charged with methamphetamine." Frye later searched Kennedy again and found an additional twenty grams of methamphetamine in his jacket pocket.

Kennedy was indicted in the United States District Court for the Southern District of Iowa. He filed a motion to suppress all physical evidence, statements, and observations obtained from the January 12, 2020, traffic stop, as well as the search and seizure of his person. After the district court denied the motion, Kennedy entered a conditional plea of guilty to one count of possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(b)(1)(A), and was sentenced to 216 months of imprisonment.

II.

A.

Kennedy argues the district court erred in denying his motion to suppress. "A mixed standard of review applies to the denial of a motion to suppress evidence." United States v. Williams, 777 F.3d 1013, 1015 (8th Cir. 2015). "We review the district court's findings of fact under the clearly erroneous standard, and the ultimate conclusion of whether the Fourth Amendment was violated is subject to *de novo* review." Id. (quoting United States v. Stephenson, 924 F.2d 753, 758 (8th Cir. 1991)).

Kennedy first argues the officers unconstitutionally extended the traffic stop. Specifically, he contends that once the officers had addressed the reason Jackson initiated the stop—the obstructed registration sticker—and arrested Kerr on the outstanding warrant, any further interaction with him or McNeer was impermissible. A traffic stop may last no longer than is necessary "to address the traffic violation that warranted the stop" and "attend to related safety concerns." Rodriguez v. United States, 575 U.S. 348, 354 (2015). An officer may continue a traffic stop until "tasks tied to the traffic infraction are—or reasonably should have been—completed." Id. When complications arise "in carrying out the traffic-related purposes of the stop, . . . police may reasonably detain a driver for a longer duration than when a stop is strictly routine." United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007). To address related safety concerns, an officer may take actions to "ensur[e]

that vehicles on the road are operated safely and responsibly." Rodriguez, 575 U.S. at 355. An officer may conduct unrelated checks or inquiries but "he may not do so in a way that prolongs the stop, absent . . . reasonable suspicion." Id. (cleaned up).

The officers did not extend the traffic stop longer than necessary to attend to the purpose of the stop and related safety concerns. Kerr was the only person in the stopped car with a valid driver's license. After her arrest, neither Kennedy nor McNeer could legally drive the car from the scene. Police video footage from the stop shows there was snow on the shoulder of the road and therefore the stopped car was parked partially on the roadway. It also was dark outside, and the road was dimly lit. Under these conditions, ensuring that the car was safely removed from the side of the road was a legitimate safety concern related to the stop. See United States v. Ovando-Garzo, 752 F.3d 1161, 1164 (8th Cir. 2014) (concluding that when none of the occupants of a vehicle was licensed to drive, the officer was permitted "to engage in a community caretaking function of safely moving the vehicle and its occupants from the side of the road"). Kennedy or McNeer told the officers that someone was coming to get the car, but no one had arrived yet. The officers did not violate Kennedy's Fourth Amendment rights by remaining at the scene until the car could be safely removed.

Kennedy next contends that he was unlawfully seized and searched when Frye asked him to step out of the car and patted him down. He argues that the pat down was unlawful because Frye lacked reasonable suspicion that he was armed.

Frye was permitted to ask Kennedy to exit the car as part of the ongoing traffic stop. Maryland v. Wilson, 519 U.S. 408, 415 (1997) ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop."). As to the pat down, the district court found that Kennedy consented by raising his arms. Even in the absence of reasonable suspicion, an officer may search an individual where the individual consents. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Martin, 982 F.2d 1236, 1238–39 (8th Cir. 1993). The consent must be voluntary. Schneckloth, 412 U.S. at 222–27. "[V]oluntariness

is a question of fact to be determined from all the circumstances." <u>Ohio v. Robinette</u>, 519 U.S. 33, 40 (1996) (quotation omitted). The government must show "that it was reasonable [for the officer] to believe that [the individual's] consent was not the result of duress or coercion, express or implied." <u>United States v. Espinoza</u>, 885 F.3d 516, 523 (8th Cir. 2018) (quotation omitted).

We see no error in the district court's finding that Kennedy voluntarily consented to the pat-down search. The video shows that when Frye asked Kennedy if he could pat him down, Kennedy responded by raising his hands above his head. We have previously found consent to search where a defendant raises his arms in response to an officer's request to conduct a pat down search. <u>See</u> <u>United States v. Lozano</u>, 916 F.3d 726, 730 (8th Cir. 2019) (defendant consented to a pat-down search when he "willingly lifted his arms to permit [the officer] to perform the pat-down"); <u>Espinoza</u>, 885 F.3d at 523–24 (defendant consented when he lifted his arms in response to the officer asking if he could conduct a pat down). Kennedy points out that he cannot be heard on the video providing verbal consent and that Frye did not obtain his written consent before conducting the pat-down. But these factors, without more, do not support Kennedy's assertion that his consent was coerced or otherwise given under duress. <u>See</u> <u>Lozano</u>, 916 F.3d at 730. We affirm the denial of the motion to suppress.

## B.

Kennedy next challenges his sentence, arguing the district court committed procedural error by failing to consider all relevant 18 U.S.C. § 3553(a) factors and to adequately explain its sentencing decision. Because Kennedy did not object to any claimed procedural error at sentencing, we review for plain error. <u>United States v. White</u>, 863 F.3d 1016, 1021 (8th Cir. 2017). "Under a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial

proceedings." United States v. Delgrosso, 852 F.3d 821, 828 (8th Cir. 2017) (cleaned up) (quoting United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011)).

At the sentencing hearing, the district court found the advisory Guidelines sentencing range was 262 to 327 months, and neither party objected. After noting that it had considered the § 3553(a) factors, the court varied downward and sentenced Kennedy to 216 months of imprisonment. The court specifically discussed several of the § 3553(a) factors, including the nature and circumstances of the offense, the seriousness of the offense, and Kennedy's history and characteristics, such as his criminal history and previous performance on court supervision. See 18 U.S.C. § 3553(a). The court explained that it chose to vary downward based on several considerations, "including [Kennedy's] physical condition, his Crohn's disease, the significant childhood trauma reflected in . . . the presentence investigation report, his long-standing struggles with addiction, and the other mitigating factors highlighted by the defense." The court recognized its authority to impose a sentence as low as the statutory minimum of ten years but found that "any further reduction would not accurately and adequately reflect the seriousness of the offense or protect the public in this instance." We find no plain error in the district court's consideration of the § 3553(a) factors and its explanation of the sentence.

III.

We affirm the judgment of the district court.

_____