United States Court of Appeals

For the Eighth Circuit

_____

No. 23-3779

_____

United States of America

*Plaintiff - Appellee*

v.

Kujali Strawther

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: October 25, 2024
Filed: January 10, 2025

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

KELLY, Circuit Judge.

Kujali Strawther pleaded guilty to possessing a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). As part of his plea agreement, Strawther reserved the right to appeal the district court's[1] denial of his motion to

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, adopting the report and recommendation of the Honorable

suppress evidence that officers found during a warrantless search of his vehicle. He argues that the district court erred in finding that the traffic stop and subsequent search were lawful. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On the afternoon of November 21, 2022, Eric Peterson, a South Dakota Highway Patrol officer, was positioned for traffic enforcement on Interstate 90 in a 65-miles-per-hour zone. Around 2 p.m., a white SUV drove by at what appeared to Peterson to be close to 80 miles per hour; by the time he could clock its speed, his radar gun reported the SUV traveling 74 miles per hour.

Peterson followed the SUV and initiated a traffic stop. He found Strawther behind the wheel, a woman in the passenger seat, and four children in the back. He explained the reason for the stop and asked for Strawther's license and registration. Strawther and the passenger said that they had rented the SUV and showed him a rental agreement. Peterson told them he planned to issue a courtesy warning for speeding and asked Strawther to accompany him to his patrol car while he completed the paperwork. By this point, a little more than four minutes had elapsed since the stop began.

Strawther went with Peterson to the patrol car and sat in the passenger seat. The two engaged in small talk while Peterson ran information Strawther had given him. Ultimately, Peterson wrote a courtesy warning, including Strawther's name, height, weight, address, phone number, date of birth, vehicle information, and that he had been traveling 74 miles per hour in a 65-miles-per-hour zone. After about three-and-a-half minutes of sitting in the patrol car with Strawther, Peterson saw the female passenger emerge from the SUV and walk to one of its rear doors. Peterson

---

Veronica Lynn Duffy, United States Magistrate Judge for the District of South Dakota.

-2-

told Strawther that he was going to check on her and also check the rental's vehicle identification number (VIN).

After exiting the patrol car, Peterson approached the passenger, who told him that she was changing one of the children's diapers. According to Peterson, while they briefly conversed, he smelled the odor of burnt marijuana emanating from the SUV.[2] Peterson finished speaking with the passenger, checked the vehicle's VIN, and returned to his patrol car, where he told Strawther about the marijuana odor and asked whether Strawther had been smoking. Strawther denied that any marijuana was in the SUV, but he admitted to having smoked in the vehicle while in California and suggested his clothes might be the culprit behind the smell.

At Strawther's suppression hearing, Peterson testified: "When I asked [Strawther] about the marijuana, he really opened his eyes, and I could see his heartbeat begin to pound more underneath his clothing in his stomach, and I could see his bottom lip quivering." In assessing this testimony, the district court agreed with the magistrate judge's conclusion that "Peterson's description of Strawther's physicality in this moment [was] not credible," as "Peterson could not have seen Strawther's heartbeat in his stomach," and video of the exchange did not show his bottom lip quivering. Instead, the court concluded that Strawther was merely "animated" and "[h]is demeanor appeared nervous." The court chose to "credit[] the remainder of Peterson's testimony," however, because it was "corroborated by the video and audio evidence."

Peterson left the patrol car, returned to the passenger, and asked her whether she had smoked marijuana in the SUV. She told him that she did not smoke but that Strawther might have some in a "sling-type bag" in the SUV. Peterson then walked

---

[2]At the suppression hearing, Peterson testified that he smelled burnt marijuana coming from the SUV as soon as he first approached it. The district court did not explicitly adopt this testimony in its factual findings, but whether he smelled burnt marijuana at the stop's onset or later while speaking with the passenger does not ultimately change the constitutionality of this search.

back to Strawther and asked him whether he had a medical marijuana card. Strawther said he did not. At this point, about eight-and-a-half minutes into the stop, Peterson told Strawther he was going to search the SUV and asked "for honesty" as to whether he would find anything. Strawther replied that there were about two pounds of marijuana in the vehicle.

Peterson called for backup, and Sergeant Josh Olson and Trooper Dan Hup soon arrived. Once they were on the scene, Peterson told the officers about Strawther's speeding, noting he saw Strawther going "74." The officers searched the vehicle and found a little over two pounds of raw marijuana in a duffel bag in the back. Hup testified that while aiding the search, he also smelled burnt marijuana. However, the officers found no drug paraphernalia—such as lighters, rolling papers, or a vacuum sealer—that might have been associated with the odor of burnt, as opposed to raw, marijuana. Finally, the officers found a gun in the female passenger's purse, which appeared to have been equipped with a "sear switch" that allowed it to be fired like an automatic weapon. Both the passenger and Strawther told Peterson that the gun belonged to Strawther. At this point, the officers arrested Strawther.

## II.

When assessing the denial of a suppression motion, we review the district court's factual findings for clear error and legal conclusions *de novo*. United States v. Kennedy, 35 F.4th 1129, 1133 (8th Cir. 2022). "We affirm unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." United States v. Gunnell, 775 F.3d 1079, 1083 (8th Cir. 2015) (quoting United States v. Douglas, 744 F.3d 1065, 1068 (8th Cir. 2014)).

First, Strawther argues that the district court erred in finding that Peterson had reasonable suspicion or probable cause to stop his SUV. As Strawther points out, Peterson's testimony that Strawther was speeding went largely uncorroborated.

Accordingly, the constitutionality of the stop hinged on Peterson's credibility. See United States v. Sallis, 507 F.3d 646, 649 (8th Cir. 2007) (noting stops are constitutionally permissible "[w]hen police officers have an objectively reasonable basis to believe that a driver is speeding"). Strawther argues that Peterson's discredited testimony—namely, his claim that he could see Strawther's heartbeat and his lip quivering—gives reason to doubt the whole of his testimony, including his claim that Strawther was speeding.

"Credibility assessments are the province of the trial court," and the district court's estimation of a witness's credibility in a suppression hearing is "virtually unassailable on appeal." United States v. Stewart, 32 F.4th 691, 694 (8th Cir. 2022) (quotations omitted). Although the court found Peterson overstated the physical signs of Strawther's nervousness, it chose to credit the rest of Peterson's testimony because it was corroborated by other evidence. For example, the courtesy citation Peterson completed on the scene listed Strawther's speed as 74 miles per hour, and Peterson told the other officers that Strawther had been going "74." Additionally, even if Strawther's lip did not quiver and his heartbeat was not visible, footage nonetheless showed him being "animated" and having a "nervous" demeanor. We cannot say that Peterson's testimony about Strawther's speed was so "internally inconsistent," "implausible on its face," or contradicted by extrinsic evidence that the district court clearly erred in believing the portions of the testimony that it chose to trust. United States v. Harper, 787 F.3d 910, 914 (8th Cir. 2015) (quoting United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995)). The district court did not err in finding the initial traffic stop constitutionally sound. See Stewart, 32 F.4th at 693–94 (finding testimony alone sufficient to uphold district court's finding that reasonable suspicion supported traffic stop).

Strawther also argues that the district court erred in denying his suppression motion because Peterson extended the traffic stop beyond its original purpose without reasonable suspicion. His argument is twofold. First, Peterson should not have taken almost nine minutes to issue a courtesy citation. And second, Peterson's testimony that he smelled burnt marijuana in the SUV is not credible.

-5-

An officer's traffic stop "may last no longer than is necessary to effectuate th[e] purpose" of addressing the infraction that led to the stop. Rodriguez v. United States, 575 U.S. 348, 354 (2015) (quotation omitted). "Once 'the purpose of the traffic stop is complete[,] further detention of the driver or vehicle would be unreasonable, unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention or unless the continued encounter is consensual.'" United States v. Williams, 929 F.3d 539, 544 (8th Cir. 2019) (alteration in original) (quoting United States v. Quintero-Felix, 714 F.3d 563, 567 (8th Cir. 2013)). Whether a detention is reasonable presents "a fact-intensive question, measured in objective terms by examining the totality of the circumstances." United States v. Englehart, 811 F.3d 1034, 1041 (8th Cir. 2016).

We see no reversible error in the district court's finding that Peterson did not unjustifiably prolong the stop. "[L]aw enforcement must be 'reasonably diligent' in carrying out [a traffic stop's] mission," United States v. Rederick, 65 F.4th 961, 966 (8th Cir. 2023) (quoting United States v. Magallon, 984 F.3d 1263, 1278 (8th Cir. 2021)), including efforts to "complete[] a number of routine but somewhat time-consuming tasks related to [a] traffic violation.'" United States v. Ovando-Garzo, 752 F.3d 1161, 1163 (8th Cir. 2014) (quoting United States v. Riley, 684 F.3d 758, 764 (8th Cir. 2012)). Those tasks may involve "a computerized check of the vehicle's registration and the driver's license and criminal history, as well as the preparation of a citation or warning." Id. (quoting Quintero-Felix, 714 F.3d at 567). Peterson conducted these tasks while he spoke to Strawther in the patrol car, and neither testimony nor video or audio evidence suggests that Peterson stopped his citation-related tasks or engaged in any gun- or drug-related investigation before the passenger emerged from the SUV. Cf. United States v. Peralez, 526 F.3d 1115, 1120 (8th Cir. 2008) (finding extended stop unconstitutional where "[t]he stop was delayed because of the trooper's drug interdiction questioning, not because of anything related to the investigation or processing of the traffic violation"). Nor did Peterson unreasonably extend the stop by getting out of the vehicle to check on the passenger once she emerged. See Kennedy, 35 F.4th at 1133 ("When complications arise 'in carrying out the traffic-related purposes of the stop, . . . police may

reasonably detain a driver for a longer duration than when a stop is strictly routine.'" (alteration in original) (quoting United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007))).

Finally, Strawther argues that the district court erred by crediting Peterson's testimony that he smelled burnt marijuana while speaking with the passenger. See United States v. Williams, 955 F.3d 734, 737 (8th Cir. 2020) (acknowledging that the odor of marijuana provides officers probable cause to search a vehicle). Strawther notes that while both Peterson and Hup testified that they smelled burnt marijuana, the officers found only raw marijuana in the SUV and no other physical evidence to suggest that anyone had smoked inside the vehicle. However, while the officers found no physical evidence of smoked marijuana, their testimony is not without support in the record: Strawther said he had smoked in the SUV in California and suggested the smell could have been coming from his clothes. The district court's decision to credit Peterson's and Hup's testimony was not clearly erroneous. See Harper, 787 F.3d at 914 (despite factors that "might have given the district court reason to" doubt officer's testimony, finding no error absent such "internal inconsistency or implausibility necessary to compel the conclusion that [the officer] was non-credible").

We affirm the judgment of the district court.

_____